**HOMEDICAL INCORPORATED, Plaintiff,**

v.

**SARNS/3M HEALTH CARE, INC., John Doe, Inc., Richard Roe, Defendants.**

Civ. No. 93–1681 (SEC).

United States District Court,
D. Puerto Rico.

Jan. 24, 1995.

Jose A. Pagan–Nieves, San Juan, PR, for plaintiff.

Jaime Brugueras, Muñoz Boneta Gonzalez Arbona Benitez & Peral, Hato Rey, PR, for defendants.

## OPINION AND ORDER

CASELLAS, District Judge.

### I. *Preliminary Matters*

■ This case is before the Court on a motion for summary judgment filed by defendant Sarns/3m Health Care, Inc. ("Sarns/3M") against plaintiff Homedical, Inc. ("Homedical"). Plaintiff has filed a timely opposition to the motion for summary judgment, and defendant now seeks leave of court to reply. Plaintiff objects to defendant's attempt at a reply, on the grounds that, according to Local Rule 311.7, it is untimely.

Local Rule 311.7 provides a term of seven calendar days after notice of respondent's opposition, within which a movant may request leave of court to file a reply thereto. According to plaintiff's Motion to Strike Reply to Opposition to Motion for Summary Judgment, defendant's term expired on December 7, 1994. Since defendant did not file its reply until December 8, 1994, plaintiff argues it should be stricken from the record as untimely. Significantly, plaintiff does not claim it will be prejudiced by a decision to allow defendant's reply to be made part of the record. Therefore, after due consideration of the issue, and in the absence of any potential prejudice to plaintiff, the Court in its discretion hereby grants leave to file defendant's Reply to Plaintiff's Opposition to Motion for Summary Judgment which was tendered on December 8, 1994. See Local Rule 105.

### II. *Factual Context*

Minnesota Mining and Manufacturing Company ("3M") is a Delaware Corporation with its principal place of business in St. Paul Minnesota. It manufactures, markets or sells over 60,000 products worldwide. In 1981, 3M acquired Sarns, Inc., a company engaged in the development, manufacture and marketing of products for cardiac sur-

gery, such as heart-lung machines, catheters and related devices. Life Assist Corp., a corporation organized under the laws of Puerto Rico and established by José A. Mercado, began selling Sarns/3M products in Puerto Rico on or about 1973.

Plaintiff Homedical is a corporation organized in 1982 under the laws of the Commonwealth of Puerto Rico, dedicated to the business of distributing high technology medical and surgical supplies in Puerto Rico. Homedicals' sole shareholder is José A. Mercado. Sometime around 1989, Homedical took over some of the product lines previously distributed or sold by Life Assist, including the Sarns/3M product line. Homedical bought Sarns/3M products under the same credit terms as had been extended to Life Assist. Significantly, notwithstanding the prolonged business relationship between Life Assist/Homedical and Sarns/3M, there are no written contracts or agreements which establish that Sarns/3M ever appointed either Life Assist or Homedical as its exclusive distributor on the island.

On June 10, 1992, Sarns/3M sent a letter directly to customers of their products in Puerto Rico informing them that all future product orders should be placed with 3M Puerto Rico, Inc., 3M's local subsidiary. Homedical was one of the "customers" that received the letter. Pursuant to that letter, Sarns/3M has not sold its products directly to Homedical since June 1992. In addition, also in June 1992, Sarns/3M entered into a distributorship agreement with Cardiovascular Systems, Inc. for the distribution of Sarns/3M products in Puerto Rico.

Plaintiff Homedical brought suit in May 1993 claiming that defendant, without just cause, terminated its distribution agreement with Homedical, in violation of the Puerto Rico Dealers Act, 10 L.P.R.A. § 278. Defendant promptly filed its motion for summary judgment, arguing in essence that (1) Homedical was not an exclusive distributor and that (2) Homedical's distributorship relationship was never terminated.

### III. *Summary Judgment*

We begin with the oft cited summary judgment standard. According to Fed.R.Civ.P. 56, "a summary judgment motion should be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the nonmoving party is entitled to judgment as a matter of law." *NASCO, Inc. v. Public Storage, Inc.*, 29 F.3d 28 (1st Cir.1994). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment, the requirement is that there is no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). For a dispute to be "genuine", there must be sufficient evidence to permit a reasonable trier of fact to resolve the issue in favor of the nonmoving party. *U.S. v. One Parcel of Real Estate Property*, 960 F.2d 200, 204 (1st Cir.1992). See also, *Boston Athletic Ass'n v. Sullivan*, 867 F.2d 22, 24 (1st Cir.1989). "By like token, "material" means that the fact is one that might affect the outcome of the suit under the governing law." *Morris v. Government Development Bank of Puerto Rico*, 27 F.3d 746, 748 (1st Cir.1994).

Moreover, this Court may not weigh the evidence. *Casas Office Machines, Inc. v. Mita Copystar America, Inc.*, 42 F.3d 668, 684 (1st Cir.1994). Summary judgment "admits of no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails." *Id.* (citing *Greenburg v. Puerto Rico Maritime Shipping Authority*, 835 F.2d 932, 936 (1st Cir.1987)). If the facts permit more than one reasonable inference, the court on summary judgment may not adopt the inference least favorable to the nonmoving party. See *Casas Office Machines*, supra.

### IV. *Puerto Rico Dealers Act*

■ The Puerto Rico Dealers Act, commonly known as Law 75, provides that notwithstanding any contractual provision to the contrary, the supplier in a distribution contract may terminate a dealership only for just cause. 10 L.P.R.A. § 278(a). The pro-

vision defines a "dealer" as a "person actually interested in a dealer's contract because of his having effectively in his charge in Puerto Rico the distribution, agency, concession or representation of a given merchandise or service." *Id.* Due to the somewhat cryptic nature of this definition, the Puerto Rico Supreme Court has seen fit to delineate its proper scope, in light of the statute's stated purpose. See *San Juan Merc. v. Canadian Transport Co.*, 108 D.P.R. 211 (1978). As a result, it is now clear that Law 75 protects distributors who have aided in the creation of a market or have attracted new clientele for a product or service through promotion and sales. *Id.* at 217.

For purposes of its summary judgment motion, Sarns/3M does not seriously dispute the fact that Homedical performed the functions of a distributor within the meaning of Law 75 during the period the parties were mutually engaged in business. To be sure, Sarns/3M does allege in passing at one point in its motion for summary judgment that Homedical should not, as a matter of law, be classified as a distributor under Law 75 since there exists no "formal" agreement appointing plaintiff as such, and since such a relationship was expressly rejected in a letter from Larry Baldwin, Sarns/3M Sales Administration Manager, to José A. Mercado, dated March 21, 1988.

The short answer to defendant's argument is that the language of the statute is unequivocal and unambiguous when it states that a dealer's contract is a *"relationship* established between a dealer and a principal or grantor, whereby and *irrespectively of the manner in which the parties may call, characterize or execute such relationship,* the former actually and effectively takes charge of the distribution of a merchandise, or of the rendering of a service, by concession or franchise, on the market of Puerto Rico." 10 L.P.R.A. § 278 (emphasis ours). Plainly, neither the lack of a "formal" agreement, nor Mr. Baldwin's disclaimer regarding the nature of the relationship between Sarns/3M and Homedical presents a legal obstacle to a finding that Homedical is entitled to the protective cloak of Law 75. See e.g., *R.W.*

*Intern. Corp. v. Welch Food, Inc.*, 13 F.3d 478 (1st Cir.1994).

In *Welch,* the First Circuit held that a relationship within the meaning of Law 75 could be established in the absence of a formal agreement, as long as the dealer was actually in the process of distributing the supplier's merchandise, even while, as in that case, the parties were engaged in negotiations over the terms that would govern their actual and future relationship. More importantly, the Court in *Welch* reasoned that a relationship could be established within the meaning of Law 75, even if said relationship was not committed to writing. *Id.* at 483. Accordingly, this Court is of the opinion that no legal impediment precludes a finding that Homedical does indeed qualify as a dealer under the provisions of Law 75.

The parties' main contentions in this case predictably center around the exclusive versus the non-exclusive nature of the relationship between them. For example, Sarns/3M claims that its fifteen-year business relationship with Life Assist/Homedical and José Mercado cannot be characterized as exclusive, and therefore the assignment of distribution rights to Cardiovascular Devices, Inc. and the rerouting of orders through 3M Puerto Rico cannot as a matter of law be deemed as a termination of its relationship with Homedical. *See Vulcan Tools of Puerto Rico v. Makita USA, Inc.*, 23 F.3d 564 (1st Cir.1994). As support for their position, defendants point to the lack of documentary evidence offered by plaintiff to prove the existence of an exclusive distributorship agreement. In addition, defendants charge that since at least 1983, they have been selling their product directly to several consumers in the island.

Plaintiff's riposte, though somewhat confused, seems to be that the nature of the relationship, as evidenced by the history of prior transactions between the parties, explicitly establishes its exclusivity. It is plaintiff's contention that prior to 1992, Sarns/3M products were sold exclusively through Life Assist or Homedical. Plaintiff claims no knowledge of defendants' alleged sales to "end users" such as Baxter/Bentley and the Veteran's Administration Hospital.

■ The Court notes the dearth of relevant precedent to guide its analysis with respect to the legal sufficiency of a combination of oral testimony and evidence of course of dealing to prove the existence of an exclusive distributor/grantor relationship. Nevertheless, some courts have acknowledged the possibility, albeit in dicta, of utilizing those evidentiary tools to establish the exclusivity of such a relationship. *See R.W. Intern. Corp. v. Welch Food, Inc.*, 13 F.3d at 483; *Systema de Puerto Rico, Inc. v. Interface Int., Inc.*, 123 D.P.R. 379 (1989).

In *Welch* for example, the Court recognized that a relationship within the meaning of the statute may be established through a course of dealing. In that case, the parties had been operating as business partners for a year while engaged in negotiations over the terms and conditions that would govern their ongoing relationship. In those circumstances, the Court held that a dealership existed for purposes of Law 75.

In contrast, the Puerto Rico Supreme Court in *Systema* was faced with the issue of the adequacy and sufficiency of evidence submitted in support of a request for a preliminary injunction, in the context of a case charging unlawful termination of a distribution agreement under Law 75. In that case, the Superior Court enjoined Interface, Inc. from terminating its relationship with its dealer Systema and from selling its products to other distributors, all pursuant to Article 3–A of Law 75, which provides for this kind of provisional remedy. 10 L.P.R.A. § 278b–1. The Commonwealth's Supreme Court vacated the order of injunction holding that its practical effect had been to grant Systema an exclusive distributorship within the island, a benefit which it had not enjoyed under the original terms of the agreement. *Id.* The Supreme Court expanded on this holding, discussing the evidence on record, and explaining that during the period covered by the relationship, Interface not only sold products directly to several clients which constituted "national accounts" (i.e. national corporations with local subsidiaries), but also sold its products through a network of local distributors and other independent contractors. Given the above circumstances *and the fact that the "commercial practice" between the parties did not demonstrate a verbal agreement on the exclusivity of the relationship,* the Supreme Court reasoned that the injunction was unwarranted. *Systema de Puerto Rico, Inc. v. Interface Int., Inc.*, 123 D.P.R. 379 (1989) (emphasis ours).

This Court finds the rationale of these two decisions persuasive to the extent that they acknowledge the potential use of evidence of commercial practice between the parties as a helpful tool in diagnosing the existence of a relationship protected under Law 75, and its exclusive or non-exclusive nature.

■ Moreover, the Court is unconvinced that the sale of Sarns/3M products directly to a few consumers constitutes enough evidence to enable this Court to declare, as a matter of law, that the parties' relationship in this case was non-exclusive, especially given the fact that plaintiff denies any knowledge of these transactions. In light of the factual controversy surrounding the extent to which plaintiff had notice of these transactions, a decision defining the nature of the parties' relationship as non-exclusive would be premature and unsupported by the record, therefore we decline to so hold, and instead leave that decision to the fact-finder at trial.

## V. *Conclusion*

Throughout this analysis, the court must view the record in the light most favorable to the party opposing the motion, and indulge all inferences favorable to that party. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324–25, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986); *Santiago Hodge v. Parke Davis,* 909 F.2d 628, 633–34 (1st Cir.1990). Applying this standard, and after an extensive review of the record, and according the nonmoving party the indulgence required, we find that there are disputed issues of fact precluding the entry of summary judgment concerning the exclusive or non-exclusive nature of the parties' relationship under Law 75 and whether defendant's actions constitute a termination of said relationship without just cause.

Since plaintiffs have presented facts that give rise to triable issues, defendant's motion for summary judgment is hereby **DENIED.**

**SO ORDERED.**