ORBA, INC., Plaintiff,

v.

MBR INDUSTRIES, INC., Defendant.

No. Civ. 97–1083(SEC).

United States District Court,
D. Puerto Rico.

March 25, 1999.

Jeffrey M. Williams–English, Indiano Williams & Weinstein–Bacal, Hato Rey, PR, for plaintiff.

Carlos A. Rodríguez–Vidal, Goldman Antonetti & Córdova, San Juan, PR, for defendant.

68

## OPINION AND ORDER

CASELLAS, District Judge.

Pending before the Court is defendant MBR Industries, Inc. ("MBR")'s Motion for Summary Judgment (**Docket # 13**), which was duly opposed by plaintiff Orba, Inc. ("Orba") (**Docket # 19**). MBR sought leave of the Court to file a reply to Orba's opposition (**Docket # 20**), which Orba now seeks to strike as untimely pursuant to Local Rule 311.7 (**Docket # 21**). Because we find that Orba's leave to file a reply was timely filed, its motion for leave to file reply to Orba's opposition (**Docket # 20**) is **GRANTED** and Orba's motion to strike said reply (**Docket # 21**) is **DE-NIED.** Subsequently, Orba filed a supplement to its motion opposing MBR's motion for summary judgment (**Docket # 23**), in which it attaches an unsworn declaration under penalty of perjury by Mr. M. Paul Chiet, the corporate officer who entered into the sales representative agreement with Orba; said motion (**Docket # 23**) is hereby **NOTED.**

For the reasons stated below in this Opinion and Order, defendant's motion for summary judgment (**Docket # 13**) is **DE-NIED.**

### I. Factual Background

Orba filed the above-captioned action on January 23, 1997, alleging that MBR terminated its sales representative agreement without just cause, in contravention of Act 21 of December 5, 1990, 10 L.P.R.A. § 279. Subsequently, MBR filed a motion for summary judgment, which was duly opposed by Orba. Most of the essential facts of this case are hotly contested. In light of that fact, we shall specify those facts which are not in dispute, as well as lay out both sides of those issues which are disputed by the parties.

On December 13, 1994, Orba entered into a Sales Representative Agreement for Puerto Rico and the U.S. Virgin Islands with MBR (hereinafter "the Agreement"). Pursuant to the Agreement, the Commission Structure established between Orba and MBR ranged from 4% to 10%, depending on the discount that was provided to the customer. The Agreement was negotiated and entered into by James Klaus, Orba's President, and Paul Chiet, National Sales Manager for MBR.

One of the essential elements of the current dispute is whether Orba was granted exclusivity by MBR pursuant to the Agreement. MBR maintains that the Agreement did not confer exclusivity upon Orba, and to that end presents the deposition testimony of MBR's Operations Manager, Manny Pomeranc who testified that MBR does not grant exclusivity to any of its sales representatives, anywhere in the world, and thus had not done so with Orba. On the other hand, Orba furnished the Court with two unsworn declarations under penalty of perjury, one by James Klaus, and the other by Paul Chiet, the two people who undisputedly negotiated the Agreement. In said declarations, both Mr. Klaus and Mr. Chiet aver that the Agreement provided that Orba would be the exclusive representative of MBR in Puerto Rico.

Mr. Klaus and Mr. Chiet both further aver that MBR never informed Orba that it would maintain house accounts in Puerto Rico, thus servicing MBR clients directly, instead of through Orba. On the other hand, MBR argues that it informed Orba at the very beginning of the relationship that it had several house accounts in Puerto Rico and that it would continue to service those clients directly, rather than through Orba. Furthermore, they claim that several of MBR's salespeople made sales to customers in Puerto Rico before, during, and after the time that the Agreement was in place. In light of the above-stated facts, it is clear to the Court that the issue of whether Orba was granted exclusivity to represent MBR's products in Puerto Rico is a contested one.

Regarding the existence of just cause to terminate the Agreement, even if the Court were to determine that the same

provided Orba with exclusivity, MBR argues that under the Agreement Orba was to increase MBR's sales in Puerto Rico yearly, by increasing current sales to existing customers and opening new accounts, and that it failed to meet that goal. In stark contrast, Orba argues that MBR never provided Orba with any sales projections or goals prior to entering the Agreement.

MBR also states that, in spite of the tremendous assistance that MBR provided to Orba in an effort to promote sales, sales had decreased dramatically by the first quarter of 1995, 56% from the same quarter the previous year. Orba argues that this is not true, and that sales steadily increased throughout 1995, so that its sales actually exceeded the prior representative's sales for the previous year.

Furthermore, Orba argues that the month in which Orba was terminated as sales representative, February of 1996, for allegedly poor sales, was the best month for MBR sales in Puerto Rico in almost two years. They add that when they entered the market to represent MBR's products they had to reestablish goodwill with MBR's clients because MBR had established a track record of late shipments or unilateral cancellations of orders; furthermore, MBR's previous representative had taken over a lot of their former clients, providing them with competing products.

In further support of their claim that they had just cause to terminate the Agreement, MBR states that Orba failed to attend the trade shows, which was part of the Agreement, and that when they did attend, MBR's merchandise was outdated and not properly displayed, and that Orba's salespeople lacked the requisite knowledge regarding MBR's products to effectively conclude the sales. In addition, MBR argues that Orba also failed in its obligation to collect from customers with delinquent accounts.

Orba disputes MBR's characterizations of its performance, countering them with their own allegation that MBR, instead of assisting Orba with its sales of MBR's products, acted as Orba's direct competitor in Puerto Rico, in detriment of its sales capacity. To that end, they cite an incident in which at a trade show attended by Orba, an MBR representative took the opportunity provided by Orba's representative being in the bathroom to sell directly to Almacenes Pitusa, and then neglected to tell the Orba representative about the sale. Orba claims that when it confronted MBR with this knowledge, MBR denied having made the sale, and only admitted having done so when Orba produced a copy of the order. Orba claims that these actions served to undermine its sales capacity in Puerto Rico and cannot be ignored by the Court in its determination of whether there was just cause for MBR to unilaterally terminate the Agreement.

On May, 1995 Mr. Chiet sent Orba a letter indicating concern with the sales volume and requesting that sales pick up within sixty days. On August of 1995, MBR President Bernie Pomeranc sent Orba a letter indicating to Orba that it was dissatisfied with the company's performance and sales volume. On February 27, 1996, MBR sent Orba a letter terminating the Agreement, stating that Orba's actions demonstrated neglect of their essential obligations and impaired MBR's development in the Puerto Rico market. On March 13, 1996 Orba replied to MBR's termination letter, disputing their allegations that they had failed to perform up to par, and emphasizing that they had taken over a territory that was in complete disarray because of poor past performance by MBR's former representative on the Island.

In its complaint, Orba claims that its recoverable damages under Act 21 are five times the last year's profit, which quantity it estimates is no less than $133,922.50. Furthermore, Orba claims that MBR has failed to compensate Orba for earned commissions amounting to $35,000. Thus, the total damages claimed by Orba in its complaint are $168,922.50.

## II. Summary Judgment Standard

As noted by the First Circuit Court of Appeals,

> [s]ummary judgment has a special niche in civil litigation. Its role is 'to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required.' *Wynne v. Tufts University School of Medicine,* 976 F.2d 791, 794 (1st Cir. 1992), *cert. denied,* 507 U.S. 1030, 113 S.Ct. 1845, 123 L.Ed.2d 470 (1993). The device allows courts and litigants to avoid full-blown trials in unwinnable cases, thus conserving the parties' time and money and permitting courts to husband scarce judicial resources.

*McCarthy v. Northwest Airlines, Inc.,* 56 F.3d 313, 315 (1st Cir.1995).

According to Fed.R.Civ.P. 56(c), a summary judgment motion should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). *See also NASCO, Inc. v. Public Storage, Inc.,* 29 F.3d 28 (1st Cir.1994). It is not enough to conjure up an alleged factual dispute between the parties; to defeat summary judgment, there must exist a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

As stated by the First Circuit, "a party contesting summary judgment must offer the court more than posturing and conclusory rhetoric." *McIntosh v. Antonino,* 71 F.3d 29, 33 (1st Cir.1995). Furthermore, "[t]his principle is brought into bold relief when the motion targets an issue on which the nonmoving party bears the ultimate burden of proof. In that circumstance, the nonmovant must 'produce specific facts, in suitable evidentiary form,' in order to demonstrate the presence of a trialworthy issue and thereby deflect the sharp blade of the summary judgment ax." *Id., quoting*

*Morris v. Government Development Bank of Puerto Rico,* 27 F.3d 746, 748 (1st Cir. 1994).

For a dispute to be "genuine," there must be sufficient evidence to permit a reasonable trier of fact to resolve the issue in favor of the non-moving party. *United States v. One Parcel of Real Property,* 960 F.2d 200, 204 (1st Cir.1992). *See also Boston Athletic Ass'n v. Sullivan,* 867 F.2d 22, 24 (1st Cir.1989). By like token, "material" means that the fact is one that might affect the outcome of the suit under the governing law. *Morris,* 27 F.3d at 748. Moreover, "genuineness and materiality are not infinitely elastic euphemisms that may be stretched to fit whatever pererrations catch a litigant's fancy." *Lawton v. State Mutual Life Assurance Company of America,* 101 F.3d 218, 223 (1st Cir. 1996), *quoting Blackie v. State of Maine,* 75 F.3d 716, 721 (1st Cir.1996).

In determining whether to grant summary judgment, the Court may not, however, weigh the evidence. *Casas Office Machines v. Mita Copystar America, Inc.,* 42 F.3d 668 (1st Cir.1994). Summary judgment "admits of no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails." *Id., citing Greenburg v. Puerto Rico Maritime Shipping Authority,* 835 F.2d 932, 936 (1st Cir.1987). Accordingly, if the facts permit more than one reasonable inference, the court on summary judgment may not adopt the inference least favorable to the non-moving party. *Casas Office Machines,* 42 F.3d at 684.

### III. Applicable Law/Analysis—Act 21

#### A. Whether plaintiff was an exclusive sales representative

The Puerto Rico Legislature enacted the Sales Representative Act of 1990, 10 L.P.R.A. § 279 (Act 21) in order to fill the void left by the Puerto Rico Dealer's Act, 10 L.P.R.A. § 278, which did not protect sales representatives. See Statement of

Motives, *Laws of Puerto Rico* (December 5, 1990). Act 21 was meant to protect sales representatives—who "assume all the operational costs which such representation entails, such as the cost of maintaining an office, exhibition rooms, cars, office personnel, phones, electricity, water, insurance, travel costs, representation costs, office supplies, and municipal patents"—from termination without just cause. *Id.* Act 21 "is modeled after the [Dealer's Act], also known as Law 75, and it is well settled that applicable jurisprudence to Law 75 is also of application in controversies as per Law 21." *Innovation Marketing v. Tuffcare Incorporated,* 31 F.Supp.2d 218, 220 (D.Puerto Rico, 1998).

The Act defines a sales representative as "an independent entrepreneur who establishes a sales representation contract of an exclusive nature, with a principal or grantor, and who is assigned a specific territory or market, within the Commonwealth of Puerto Rico." 10 L.P.R.A. § 279a. While Act 21 does not define what constitutes an exclusive contract, and local courts have not yet addressed this issue, in interpreting contracts under Act 75 courts have noted that exclusivity is generally apparent either from the contract or from the arrangements agreed upon between the parties. *Ballester Hermanos, Inc. v. Campbell Soup Co.,* 797 F.Supp. 103, 105 (D.Puerto Rico, 1992); *R.W. Intern. Corp. v. Welch Food, Inc.,* 13 F.3d 478 (1st Cir.1994).

 In the instant case, the Agreement between the parties was not reduced to writing. However, that fact alone is not determinative as the First Circuit has held in the analogous Act 75 context that a relationship protected under the Act could be established even if the agreement between the parties was not committed to writing. *See Welch, supra.* Thus, in our determination of whether the agreement between Orba and MBR provided for exclusivity, we must rely on a combination of evidence, comprised of both oral testimony and course of dealing evidence. *See Homedical Incorporated v. Sarns/3M Health Care, Inc.,* 875 F.Supp. 947 (D.Puerto Rico, 1995). In so doing, we are compelled to find that there is a clear genuine issue of material fact as to whether the parties agreed that Orba would be MBR's exclusive representative in Puerto Rico, as is evidenced by the clear conflict between the declarations of James Klaus and Paul Chiet, on the one hand, and Manny Pomeranc on the other. In light of the limitations imposed upon the Court in deciding a motion for summary judgment, that we view the facts presented in the light most favorable to the nonmovant, we find that there is a triable issue regarding the exclusive nature of the Agreement which must be decided by the jury.

## B. Whether there was "just cause" to terminate the Agreement

Once again, we must turn to Act 75 caselaw to determine whether MBR had "just cause" to terminate the Agreement with Orba. Act 21 defines "just cause" as "noncompliance of any of the essential obligations of the sales representation contract by the sales representative, or any action or omission on his part that may adversely and substantially affect the interests of the principal or grantor in the development of the market or the sales of the merchandise or services." 10 L.P.R.A. § 279(d).[1]

In addition, Act 21 provides that "it shall not be deemed as just cause ... [t]he violation or noncompliance of any provision included in the sales representation contract by a sales representative, which fixes ... sales quotas or goals ... that do not conform to the realities of the Puerto Rican market at the time of the violation or noncompliance by the sales representative." 10 L.P.R.A. § 279b(a). In that same section, the Act provides that "[t]he

---

1. Act 75's definition of "just cause", contained in 10 L.P.R.A. § 278(d), is virtually identical to that of Act 21.

burden of proof to evidence the fairness ... of the fixed quota or goal shall rest on the principal or grantor." *Id.*

Furthermore, Act 21 states that "[e]xcept when proved otherwise, it shall be presumed that a principal or grantor has impaired the established relationship ... [w]hen the principal or grantor establishes facilities in Puerto Rico for the direct representation of merchandise or the rendering of services which the sales representatives has previously been in charge of." 10 L.P.R.A. § 279b(b)(1).

█ The First Circuit has held that "[u]ltimately, 'just cause' under Law 75 is a question of fact." *Welch,* 88 F.3d at 51. In addition, the Court has held that "once a dealer demonstrates that the principal unilaterally terminated their contract, the principal must carry the burden of persuasion on the factual elements of the 'just cause' showing." *Id.* at 52. Because "just cause is an affirmative defense, the ultimate burden of proof falls on the defendant." *Draft–Line Corp. v. The Hon Company,* 781 F.Supp. 841, 843 (D.Puerto Rico, 1991), *citing Warner Lambert Co. v. Tribunal Superior De Puerto Rico,* 101 D.P.R. 378, 387 (1973).

Orba argues that MBR clearly fails to meet its burden of proof for purposes of this "just cause" determination in the summary judgment context. First, Orba argues that decreased sales may not be used by MBR as a justification for terminating the Agreement because in fact, sales increased under Orba compared to the sales of the previous year. Furthermore, Orba states that MBR has not met its burden of proving that its alleged sales goals conformed to the realities of the Puerto Rican market, especially in light of the fact that Orba had inherited a sales territory which was in disarray and in which MBR's goodwill had been substantially eroded by their performance under the previous sales representative. Thus, Orba posits to the Court that under the terms of the statute, MBR's reasons in terminating the Agreement cannot be deemed to constitute "just cause" because MBR has not established that its expectations of increased sales were reasonable.

█ We agree with Orba that under the express terms of the statute, the burden is on MBR to prove the reasonableness of its sales goals. We further agree with Orba that MBR has failed to present to the Court any evidence that would counter Orba's assertions that they performed as well as could be expected under the conditions in which they inherited the market from MBR's previous sales representative in early 1995. There is a clear issue of contested fact as to whether Orba's alleged omissions under the Agreement, such as failure to attend trade shows and lack of knowledge regarding MBR's products, which are contested by Orba, will be sufficient to constitute "just cause" under Act 21 and thus this determination must be made by a jury, rather than by the Court via summary judgment.

In further support of its position that summary judgment on the "just cause" issue is precluded under Act 21, Orba argues that MBR impaired the relationship as provided for in section 279(b)(1) when it sold directly to Orba's customers in Puerto Rico, in direct contravention of the exclusive sales representative agreement. We find that a jury could find that MBR had impaired the relationship with Orba when it sold directly in Puerto Rico through house accounts if the jury had previously found that the Agreement between them furnished exclusivity upon Orba. These are factual determinations which are interdependent; because we have found that there are genuine issues of material fact as to whether MBR was precluded from maintaining house accounts in Puerto Rico at the same time that Orba was representing its products, we must find that there are genuine issues of material fact regarding whether MBR had impaired the relationship and thus lacked just cause to terminate the Agreement.

In short, we find that a determination of whether MBR had just cause to terminate the Agreement with Orba is dependent on facts which are in dispute. Therefore, this determination is not subject to summary disposition and must be made by a jury.[2]

## IV. Conclusion

Pursuant to the above discussion, we find that there are clear genuine issues of material fact which preclude the granting of summary judgment in favor of defendant MBR Industries, Inc. In light of that, defendant's motion for summary judgment (**Docket # 13**) is hereby **DENIED.**

Furthermore, MBR's leave to reply to Orba's opposition to motion for summary judgment (**Docket # 20**) is **GRANTED** and Orba's motion to strike said reply (**Docket # 21**) is **DENIED.** Finally, Orba's supplement to its motion opposing MBR's motion for summary judgment (**Docket # 23**) is **NOTED.**

**SO ORDERED.**

---

2. In their motion for summary judgment, MBR argues that the Court should also dismiss the above-captioned action for lack of subject matter jurisdiction. MBR claims that a finding that Orba was not a sales representative within the purview of Act 21 precludes the awarding of damages under said statute, which provides for damages five times the benefits lost due to unlawful termination. Thus, because Orba would not be entitled to said damages, its only remaining action would be for breach of contract for the alleged unpaid commissions, which would not amount to the jurisdictional amount of $75,-000, as provided for in the diversity jurisdiction statute, 28 U.S.C. § 1332. We shall not discuss this argument further since the Court has determined that the issue of whether Orba was a sales representative within the purview of Act 21 is one for the jury. However, we note that even if MBR's argument regarding the jurisdictional amount was not predicated upon this Court finding that Orba was not a sales representative protected by Act 21, we find that Orba's expert witness report, prepared by Mr. Donald Kevane and which calculates Orba's damages to be no less than $132,254, presents an issue of material fact regarding the amount of damages that Orba would be entitled to, which may be disputed by MBR's expert witness, but which must be decided by the jury.