**David VALENTÍN, Plaintiff**

v.

**WHITE ROSE, INC., Defendant.**

**Civil No. 12–1870(DRD).**

United States District Court,
D. Puerto Rico.

Jan. 27, 2014.

Hector Benitez–Arraiza, Quinones & Ar-
bona, P.S.C., San Juan, PR, for Plaintiff.

Enrique J. Mendoza–Mendez, Mendoza
Law Office, San Juan, PR, John R. Martin,
Todd J. Shill, Rhoads & Sinon LLP, Har-
risburg, PA, for Defendant.

## OPINION AND ORDER

DANIEL R. DOMÍNGUEZ, Senior
District Judge.

David Valentín ("Plaintiff"), a Puerto
Rico resident, filed a complaint alleging
the unjust termination of a sales represen-
tative contract between him and White
Rose, Inc. ("Defendant"), a Delaware cor-
poration. Plaintiff's cause of action is
based on the Puerto Rico Sales Represen-
tative Act, as amended, 10 L.P.R.A. § 279
et seq. ("Law 21"), which proscribes ter-
mination without just cause of a sales rep-
resentative contract. Plaintiff avers an al-
ternative cause of action under local Law
80 claiming unjust dismissal from employ-
ment. Docket No. 13.

Defendant filed a motion to dismiss un-
der Rule 12(b)(6) of the Federal Rules of
Civil Procedure and a brief in support of
the same (Docket Nos. 17 and 18). Defen-
dant asserts that Plaintiff failed to demon-
strate a plausible entitlement of relief un-
der Law 21 (Docket Nos. 18 and 26).
However, Defendant barely addresses
Plaintiff's claims under Law 80—and as
addressed only as an apparent after-
thought, on a footnote on the very last
page of the brief. Defendant's defense
against Plaintiff's Law 80 claim is a feeble
attempt for Defendant only alluded to hav-
ing a defense against Plaintiff, without
pleading such defenses, and alerting of
having "sufficient 'just cause'" for Plain-
tiff's termination, also without identifying
the just cause. Docket No. 18, note 3 on
page 12. Instead, Defendant's motion to
dismiss rested only on attacks of Plaintiff's
Law 21 claims admitting to making pay-
ments to Plaintiff that were "much more
akin to an employer-employee relationship

enforceable under Law 80," (Docket No. 18, page 9); and on their claim in the prayer for relief that "[i]f [Plaintiff] is entitled to any relief in this matter, it would be pursuant to Law 80, i.e., the other claim forwarded in the Amended Complaint." *Id.* at page 12.

Based on the analysis that follows, the Court hereby **GRANTS IN PART AND DENIES IN PART** Defendant's motion to dismiss. The motion to dismiss is **GRANTED** as to Plaintiff's causes of action under Law 21 and it is **DENIED** as to Plaintiff's causes of action under Law 80.

## I. BACKGROUND

In or around December of 1998, Plaintiff began a professional relationship[1] with Defendant to introduce in the Puerto Rico retail market products distributed by Defendant. Plaintiff's responsibilities included identifying buyers for Defendant's products, as well as developing the marketing and promotion of such products (Docket No. 13, ¶¶ 9–10). Under the professional relationship with Defendant, Plaintiff had the prerogative of "devising, developing, and implementing sale and promotion strategies for the [Puerto Rico] market of the products entrusted only to Plaintiff by [Defendant]." *Id.* at ¶ 12. Allegedly, Plaintiff's duties were to be performed on "a continuous basis, with no fixed end date, through a set compensation for his services." *Id.* at ¶ 11. Plaintiff listed his duties as follows:

a.  obtaining a workspace for himself;

b.  setting the agenda for tasks to be performed by Plaintiff;

c.  cost reduction initiatives;

d.  identifying buyers for the [Defendant] products entrusted to him exclusively;

e.  nurturing the business relationships with current buyers in the PR market, and seeking new buyers;

f.  initiate, procure, and conclude sales contracts, binding [Defendant], for the products it entrusted to Plaintiff;

g.  procuring and executing binding personal credit guarantees, in favor of [Defendant], with the principals of the buyer corporations; and,

h.  supervising the warehouse operations of [Defendant's] products in [Puerto Rico].

*Id.* at ¶ 13. Also during the "professional relationship," Plaintiff "enjoyed autonomy to carry out his tasks in the [Puerto Rico] market." *Id.* at ¶ 14. Plaintiff avers that his efforts had been increasingly lucrative to the parties and showed trends of continued growth. *Id.*

By the late 2006, Defendant afforded Plaintiff sick and vacation leave accrual; health insurance benefits; reimbursement of expenses incurred by Plaintiff; and withholding of employment taxes. On January of 2007, upon Plaintiff's inquiry to Defendant, Plaintiff was allegedly notified that Defendant changed Plaintiff's classification from "employee" to "independent contractor."[2] *Id.* at ¶ 35. Apparently, the

[1] Plaintiff refers to this relationship interchangeably as a "professional relationship", a "business relationship", an "exclusive sales representative relationship", or an "agreement between the parties", though no proffer is made as to the specific type of relationship, the terms of the agreement or the manner in which such agreement was executed.

[2] To the Court the explanation that Plaintiff was receiving these benefits as part of the compensation package for the new classification of "independent contractor" appears incongruous. In the Court's knowledge and experience, the compensation package described in Plaintiff's allegation is mostly associated with that of an employee. Thus, the Court would have expected a change in classification from "independent contractor" to

so called "business relationship" had been considered by Defendant as an employment relationship until the end of 2006, and as a professional services relationship thereafter. Notwithstanding the change in Plaintiff's classification or characterization by Defendant, Plaintiff avers that: (1) Plaintiff had no authority to hire or terminate Defendant's employees; (2) Plaintiff was economically dependent on the compensation received from Defendant; (3) Plaintiff's compensation was not contingent on the outcome of his tasks; and (4) Plaintiff's tasks were for the sole purpose of furthering Defendant's interests, which constituted Defendant's entire operations in Puerto Rico until 2011.

Around mid–2011, the manner in which the relationship between the parties was conducted continued to change. Plaintiff claims that Defendant initiated "a business relationship" with a Mr. Fernando Herrera and that Defendant required that Plaintiff share Plaintiff's experience, contracts, and overall expertise with Herrera because Herrera was to be selling a line of Defendant's international products in the Puerto Rico market. *Id.* at ¶ 16–17. Plaintiff complied with Defendant's request and assisted Herrera in recruiting, interviewing and training personnel to sell the international products. Plaintiff also shared with Herrera's personnel his know-how in the business and his client listing and introduced Herrera's personnel to some of Plaintiff's contacts at the various stores where Plaintiff sold Defendant's products. *Id.* at ¶ 18. At this point, the Court notes that Plaintiff did not identify whose business know-how Plaintiff was sharing with Herrera and his personnel. This information is potentially relevant for a claim un-

der Law 21 such as the instant claim as said evidence may show the existence of Plaintiff's business as an independent entrepreneur, which is critical for Plaintiff's Law 21 cause of action.

On October of 2011, Plaintiff alleges that he noticed that the products he was selling in the Puerto Rico market were also to be sold by Herrera in Puerto Rico. *Id.* at ¶ 19. Because Plaintiff considered himself as an exclusive sales representative of Defendant's products in Puerto Rico, Plaintiff notified this matter to Defendant. Allegedly, Defendant took no action in this respect. *Id.*

Finally, on April 12, 2012, Plaintiff was terminated from his "business relationship" with Defendant without an explanation, except that Defendant clarified that Plaintiff's termination was not related to his performance. *Id.* at ¶ 20. Since Plaintiff's termination, Herrera and his personnel have allegedly been carrying out Plaintiff's duties. *Id.* at ¶ 21.

## II. RULE 12(b)(6) MOTION TO DISMISS STANDARD

Federal Rule of Civil Procedure 8(a) requires plaintiffs to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R.Civ.P. 8(a)(2). When addressing a motion to dismiss filed by a defendant under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "we accept as true all well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff[ ]." *Gargano v. Liberty Int'l Underwriters, Inc.*, 572 F.3d 45, 48–49 (1st Cir. 2009). However, under *Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), a plaintiff must "provide the grounds of his entitle-

"employee" instead of the other way around, as Plaintiff plead. Such a change would justify Plaintiff beginning to receive payment for benefits such as health insurance and sick

and vacation leave accrual, as well as Defendant's obligation to withhold employment taxes at the origin.

ment [with] more than labels and conclusions." See *Ocasio–Hernandez v. Fortuño–Burset,* 640 F.3d 1, 12 (1st Cir.2011) ("in order to 'show' an entitlement to relief a complaint must contain enough factual material 'to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).' ") (quoting *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955) (citation omitted). Thus, a plaintiff must, and is now required to, present allegations that "nudge [his] claims across the line from conceivable to plausible" in order to comply with the requirements of Rule 8(a). *Id.* at 570, 127 S.Ct. 1955; *see e.g. Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

When considering a motion to dismiss, the Court's inquiry occurs in a two-step process under the current context-based "plausibility" standard established by *Twombly,* 550 U.S. 544, 127 S.Ct. 1955, and *Iqbal,* 556 U.S. 662, 129 S.Ct. 1937. "Context based" means that a Plaintiff must allege sufficient facts that comply with the basic elements of the cause of action. *See Iqbal,* 556 U.S. at 671–672, 129 S.Ct. 1937 (concluding that plaintiff's complaint was factually insufficient to substantiate the required elements of a Bivens claim, leaving the complaint with only conclusory statements). First, the Court must "accept as true all of the allegations contained in a complaint[,]" discarding legal conclusions, conclusory statements and factually threadbare recitals of the elements of a cause of action. *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937; *Mead v. Independence Ass'n,* 684 F.3d 226, 231 (1st Cir. 2012) ("Any statements in the complaint that are either legal conclusions couched as facts or bare bones recitals of the elements of a cause of action are disregarded."). "Yet we need not accept as true legal conclusions from the complaint or 'naked assertion[s]' devoid of 'further factual enhancement.' " *Maldonado v. Fontanes,* 568 F.3d 263, 268 (1st Cir.2009) (quoting *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937) (quoting *Twombly,* 550 U.S. at 557, 127 S.Ct. 1955).

Under the second step of the inquiry, the Court must determine whether, based upon all assertions that were not discarded under the first step of the inquiry, the complaint "states a plausible claim for relief." *Iqbal,* 556 U.S. at 679, 129 S.Ct. 1937. This second step is "context-specific" and requires that the Court draw from its own "judicial experience and common sense" to decide whether a plaintiff has stated a claim upon which relief may be granted, or, conversely, whether dismissal under Rule 12(b)(6) is appropriate. *Id.*

Thus, "[i]n order to survive a motion to dismiss, [a] plaintiff must allege sufficient facts to show that he has a plausible entitlement to relief." *Sanchez v. Pereira–Castillo,* 590 F.3d 31, 41 (1st Cir.2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]' 'that the pleader is entitled to relief.' " *Iqbal,* 556 U.S. at 679, 129 S.Ct. 1937 (quoting Fed.R.Civ.P. 8(a)(2)). Furthermore, such inferences must be at least as plausible as any "obvious alternative explanation." *Id.* at 682, 129 S.Ct. 1937 (citing *Twombly,* 550 U.S. at 567, 127 S.Ct. 1955). "A plaintiff is not entitled to 'proceed perforce' by virtue of allegations that merely parrot the elements of the cause of action." *Ocasio–Hernandez,* 640 F.3d at 12, (citing *Iqbal,* 556 U.S. at 680, 129 S.Ct. 1937).

The First Circuit has cautioned against equating plausibility with an analysis of the likely success on the merits, affirming that the plausibility standard assumes "pleaded facts to be true and read in a plaintiff's favor" "even if seemingly incred-

ible." *Sepúlveda–Villarini v. Dep't of Educ. of P.R.*, 628 F.3d 25, 30 (1st Cir. 2010) (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955); *Ocasio–Hernandez*, 640 F.3d at 12 (citing *Iqbal*, 556 U.S. at 680, 129 S.Ct. 1937); *see Twombly*, 550 U.S. at 556, 127 S.Ct. 1955 ("[A] well-pleaded complaint may proceed even if it appears that a recovery is very remote and unlikely.")(internal quotation marks omitted); *see Ocasio–Hernandez*, 640 F.3d at 12 (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955) ("[T]he court may not disregard properly pled factual allegations, 'even if it strikes a savvy judge that actual proof of those facts is improbable.' "). Instead, the First Circuit has emphasized that "[t]he make-or-break standard ... is that the combined allegations, taken as true, must state a plausible, [but] not a merely conceivable, case for relief." *Sepúlveda–Villarini*, 628 F.3d at 29.

However, a complaint that rests on "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" will likely not survive a motion to dismiss. *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir.1996); *Sánchez v. United States*, 671 F.3d 86, 92 (1st Cir.2012) ("we must credit the plaintiff's well-pled factual allegations and draw all reasonable inferences in the plaintiff's favor.") (internal quotations omitted). Similarly, unadorned factual assertions as to the elements of the cause of action are inadequate as well. *Penalbert–Rosa v. Fortuno–Burset*, 631 F.3d 592 (1st Cir.2011). "Specific information, even if not in the form of admissible evidence, would likely be enough at [the motion to dismiss] stage; pure speculation is not." *Id.* at 596; *see Iqbal*, 556 U.S. at 681, 129 S.Ct. 1937 ("To be clear, we do not reject [ ] bald allegations on the ground that they are unrealistic or nonsensical ... It is the conclusory nature of [the] allegations, rather than their extravagantly fanciful nature, that disentitles

them to the presumption of truth."); *see Mendez Internet Mgmt. Servs. v. Banco Santander de P.R.*, 621 F.3d 10, 14 (1st Cir.2010) (The *Twombly* and *Iqbal* standards require District Courts to "screen[ ] out rhetoric masquerading as litigation.").

Finally, the Court notes that "[i]t is not necessary to plead facts sufficient to establish a prima facie case at the pleading stage." *Rodríguez–Reyes v. Molina–Rodríguez*, 711 F.3d 49, 54 (1st Cir.2013). Notwithstanding, the elements of the prima facie case are relevant to a plausibility determination and "[t]hose elements are part of the background against which a plausibility determination should be made." *Id.*

## III. LEGAL STANDARD

### A. Law 21—Puerto Rico Sales Representative Act

Plaintiff's leading cause of action is founded on the Puerto Rico Sales Representative Act, as amended, 10 L.P.R.A. § 279 et seq. ("Law 21"). Law 21 protects local sales representatives from arbitrary terminations by the principal after the local sales representative creates a market for its principal. 10 L.P.R.A. § 278. According to the Statement of Motives, Law 21's protection is justified in that the sales representatives bear "all the operational costs which such representation entails, such as the cost of maintaining an office, exhibition rooms, cars, office personnel, phones, electricity, water, insurance, travel costs, representation costs, office supplies, and municipal [license taxes]." *Orba, Inc. v. MBR Indus., Inc.*, 49 F.Supp.2d 67, 71 (D.P.R.1999). Specifically, the statute provides that "no principal or grantor may terminate [the principal-sales representative] relationship, or directly or indirectly perform any act that may impair the established relationship, or

refuse to renew said contract ..., except for just cause." 10 L.P.R.A. § 279a. Should the principal terminate its commercial relationship with an exclusive sales representative without just cause, the principal may be liable to the exclusive sales representative for the damages caused. *Id.*

In the context of Law 21, the term "just cause" is defined as "[n]oncompliance of any of the essential obligations of the sales representation contract by the sales representative, or any act or omission on his/her part that may adversely and substantially affect the interests of the principal or grantor in the development of the market or the sale of merchandise or services." 10 L.P.R.A. § 279(d). Thus, a sales representation agreement whereby the sales representative complies with the essential obligations of the agreement and acts with the best interests of the principal in mind should not be terminated at the principal's will.

A sales representative protected under Law 21 is "[a]n independent entrepreneur who establishes a sales representation contract of an exclusive nature, with a principal or grantor, and who is assigned a specific territory or market, within the Commonwealth of Puerto Rico." 10 L.P.R.A. § 279a. The courts have described exclusive sales representatives protected under Law 21 as business intermediaries who: (1) promote and process contracts on behalf of a principal in an ongoing, stable and exclusive manner; (2) operate in a defined territory or market; (3) have the responsibility for creating or expanding the market for the principal's products through his promotional efforts; (4) receive commissions for his services or a pay previously agreed upon by the parties; and (5) operate as independent merchants and own its organization which complexity would depend on the type of commercial relationship established with the principal and the nature of the product. *See IOM Corp. v. Brown Forman Corp.*, 627 F.3d 440, 446 (1st Cir.2010) (citing *Cruz Marcano v. Sánchez Tarazona*, 172 D.P.R. 526 (2007)).

■ Law 21 requires exclusivity in the sales representation contract for an actionable claim against the principal. Although Law 21 is silent as to what constitutes exclusivity, (see *González v. Hurley International LLC*, 920 F.Supp.2d 243, 249 (D.P.R.2013) (citing *Orba, Inc. v. MBR Indus., Inc.*, 49 F.Supp.2d 67, 71 (D.P.R. 1999) and *IOM Corp. v. Brown Forman Corp.*, 627 F.3d at 448)), the Puerto Rico Supreme Court explained that, in the context of Law 21,:

> the term exclusive ... [is] a privilege or right by virtue of which a person or corporation can do something prohibited from the rest. Furthermore, an exclusive agency is characterized by the fact that the agent may keep the represented businessman from conducting operations in the zone reserved to the former, whether this involved operations conducted personally by the businessman, or operations carried out through his assistants or other agents. Therefore, hypothetically in a sales representative agreement protected by ... [Law 21], the principal cannot on his own or through a third party perform the same jobs as he has conferred on the agent; that is, he would not be able to operate in the agent's territory or market.

*González v. Hurley International LLC*, 920 F.Supp.2d at 249 (citing *Cruz Marcano v. Sánchez Tarazona*, 172 D.P.R. at 548). Thereafter, the First Circuit has held that "[t]he exclusivity requirement is met where neither the principal merchant nor third parties are allowed to sell the product in the same territory or market in which the sales representative operates."

*IOM Corp. v. Brown Forman Corp.,* 627 F.3d at 448.

The statute is also silent as to the types of commissions or remuneration that a sales representative may receive to be considered as such. Nonetheless, though not expressing an opinion on the specifics of such commissions or remuneration, the Puerto Rico Supreme Court held that "it is essential that the sales representative's remuneration does not render him an employee of the principal because, if that were the case, then the sales representative would no longer be deemed an independent entrepreneur, which is an indispensable requirement for this type of agent." See *Cruz Marcano v. Sánchez Tarazona,* 172 D.P.R. at note 6.

■ The protection granted by Law 21 to sales representatives requires the existence of a "sales representation contract", which is

[an] agreement established between a sales representative and a principal, through which, and regardless of the way in which the parties establish, delineate or formalize said agreement, the party of the first part commits himself to making a reasonable effort and due diligence in the creation or expansion of a market which is favorable for the products that the principal sells, directed at capturing clientele to offer it a product or service marketed by him in Puerto Rico, and the party of the second part is bound to comply with the commitments that may result from the sales representative's efforts and coordination and to pay the previously-accorded commission or remuneration.

10 L.P.R.A. § 279(c).

■ Lastly, a sales representative need not be assigned the entire territory of Puerto Rico, or all markets for the products in Puerto Rico to be considered an exclusive sales representative within the provisions and protections of Law 21. "It is sufficient that the representative be assigned a 'specific' territory or market 'within' Puerto Rico." *González v. Hurley International LLC,* 920 F.Supp.2d 243, 254 (D.P.R.2013).

**B. Law 80—Wrongful Discharge Act**

Plaintiff pleads alternatively a cause of action under local Law 80, a statute that provides a remedy for employees wrongfully discharged. 29 L.P.R.A. §§ 185a–185m. Law 80 requires employers to compensate employees who are discharged without "just cause," which is attained in the following circumstances:

(a) That the worker indulges in a pattern of improper or disorderly conduct.

(b) The attitude of the employee of not performing his work in an efficient manner, or of doing it belatedly and negligently or in violation of the standards of quality of the product produced or handled by the establishment.

(c) The employee's repeated violations of the reasonable rules and regulations established for the operation of the establishment, provided a written copy thereof has been opportunely furnished to the employee.

(d) Full, temporarily or partial closing of the operations of the establishment.

Provided, That in those cases in which the company has more than one office, factory, branch or plant, the full, temporary or partial closing of operations of any of these establishments shall constitute just cause for discharge pursuant to this section.

(e) Technological or reorganization changes as well as changes of style, design or the nature of the product made or handled by the establishment, and changes in the services rendered to the public.

(f) Reductions in employment made necessary by a reduction in the anticipated or prevailing volume of production, sales or profits at the time of the discharge.

29 L.P.R.A. § 185b. However, a discharge made by "the mere whim of the employer" or without any of the defined causes relating to the "to the proper and normal operation" of the employer shall not be construed as "just cause." *Id.*

Law 80 entitles employees discharged without just cause to a form of severance pay known as "mesada," which is calculated according to a formula based on the employee's salary and years of service. 29 L.P.R.A. § 185g; *Otero–Burgos v. Inter American University,* 558 F.3d 1, 7–9 (1st Cir.2009). However, if an employee is discharged with just cause, the employer will not be liable for payment of the severance under Law 80. 29 L.P.R.A. §§ 185a–185b.

■ Law 80 establishes a presumption of unjust dismissal against employers. *See Varela Teron, supra* (citing *Diaz v. Wyndham Hotel Corp.,* 155 D.P.R. 364, 378 (2001); *Arce v. Martínez,* 146 D.P.R. 215, 230–31 (1998); *Delgado Zayas v. Hosp. Interamericano,* 137 D.P.R. 643 (1994)). Under Law 80, if an employee brings a claim for wrongful discharge, the employer has the burden of proving that the dismissal was justified. *See Varela Teron v. Banco Santander de Puerto Rico,* 257 F.Supp.2d 454, 464–65 (D.P.R.2003). Under Law 80, "[i]n every action instituted by an employee claiming the benefits [of Law 80] the employer is bound to plead in his answer to the complaint, the facts that led to the dismissal, and prove that it was justified ..." 29 L.P.R.A. § 185k. Thus, "once an employee proves that he was discharged and alleges that his dismissal was unjustified, his employer must establish by a preponderance of the evidence that the discharge was for good cause [as defined under the statute]." *Hoyos v. Telecorp Communications, Inc.,* 488 F.3d 1, 6 (1st Cir.2007). *See also, Alvarez–Fonseca v. Pepsi Cola of P.R. Bottling Co.,* 152 F.3d 17, 28 (1st Cir.1998).

## IV.  DISCUSSION

■ Based on the previous exposition of the applicable law, Plaintiff's Law 21 claim fails on the pleadings as he failed to allege sufficient facts to show that Plaintiff was entrusted with exclusive sales responsibilities; and that he operates as an independent entrepreneur.

"Exclusivity 'is generally apparent either from the contract or from the arrangements agreed upon between the parties.' " *IOM Corp. v. Brown Forman Corp.,* 627 F.3d at 448 (citing *Orba, Inc.,* 49 F.Supp.2d at 71). This exclusivity requirement is met where neither the principal merchant nor third parties are allowed to sell the principal's product in the same territory or market in which the sales representative operates. *Id.* (citing *Cruz Marcano v. Sánchez Tarazona,* 172 D.P.R. at 537–38).

In the instant claim, Plaintiff's amended complaint mentions the exclusivity requirement in a conclusory manner. Although Plaintiff claims that he alone was responsible for the sale of Defendant's food items in Puerto Rico, and that such sales reached $550,000 to $700,000 in average monthly sales in the period of August of 2010 to February of 2012 (see Docket No. 13, ¶ 15), the amended complaint is devoid of any factual allegations regarding the scope of Plaintiff's alleged exclusive right to procure and execute purchase orders on Defendant's behalf. Plaintiff's amended complaint is also lacking factual allegations regarding any assurances from Defendant that would support the contention that no other sales representatives were allowed to sell the products he sold in Puerto Rico

or in a particular geographic area. In fact, Plaintiff himself admits that on October of 2011, Defendant hired Herrera to sell Defendant's products in the Puerto Rico market and that Herrera's product list included products that Plaintiff was also selling in Puerto Rico. Further, Plaintiff does not provide a description or identification of Defendant's food items that were allegedly assigned exclusively to Plaintiff.

The Court understands that there is a difference between being the only sales representative selling certain products in one entire market without an intention for exclusivity, and being the exclusive sales representative of those same products in that same market. Thus, the fact that Plaintiff may have been Defendant's only sales representative from 1998 to 2011 does not necessarily render him Defendant's exclusive sales representative without factual allegations that would meet the plausibility requirement for the exclusivity element of a Law 21 cause of action.

Plaintiff's Law 21 claim mostly fails for lack of sufficient factual allegations as to Plaintiff operating as an independent entrepreneur. Law 21 requires that the sales representative be an independent entrepreneur that establishes his own operations to carry out the responsibilities entrusted onto him by the principal. Consequently, such a sales representative would incur in certain operational costs that would allow him to perform the duties included in the sales representation agreement such as the costs of maintaining an office, the costs associated with owning a car used in his operations, administrative costs, office personnel, utility costs, insurance, travel costs, representation costs, office supplies, and other similar costs.

In this case, Plaintiff averred in the amended complaint that, under the alleged sales representation agreement, Plaintiff was responsible for "obtaining a workspace for himself." *See* Docket No. 13 ¶ 13. However, Plaintiff does not allege whether he was able to obtain a workplace for himself, or who would bear the costs of the expenditures associated with obtaining a workplace for himself. Instead, Plaintiff admits to receiving a "set compensation for his services" (Docket No. 13, ¶ 11) that included payment of car allowance, cell phone use and other representation expenses—all which are mostly associated with the operational costs of a business enterprise. This scenario is not indicative that Plaintiff was an independent entrepreneur hired to act as a sales representative under the provisions of Law 21 but rather, an employee of Defendant.

Further, Plaintiff admits that his compensation "was not tied to the outcome of the tasks performed on [Defendant's] behalf." *Id.* at ¶ 36. Law 21 requires that an exclusive sales representative receive a commission or remuneration for his services which, although not defined in the statute, the Puerto Rico Supreme Court held that such commission or remuneration should not render the sales representative seeking the protection of Law 21 as an employee of the principal. *See Cruz Marcano v. Sánchez Tarazona*, 172 D.P.R. at n. 6. Based on Plaintiff's description of his compensation and allegations in the amended complaint, the Court finds that Plaintiff's compensation is similar to the compensation paid to an employee, especially because it included payment of "sick and vacation days," "health insurance," "car allowance, cell phone use, [. . .] other representation expenses" and was subject to withholding of "the usual portions of tax and other [withholdings] under law" (i.e., employment taxes). *Id.* at ¶ 34.

Thus, even if we take as true Plaintiff's factual allegations, the Court cannot find sufficient well pleaded factual allegations

showing that Plaintiff was indeed an independent entrepreneur. Because the well-pleaded facts in Plaintiff's amended complaint do not support the conclusion that he was an exclusive sales representative and that he was an independent entrepreneur, the Court finds that the complaint fails to establish that Plaintiff is plausibly entitled to relief under Law 21.

Notwithstanding the above, the Court reaches a different conclusion regarding Plaintiff's cause of action under Law 80.

■ Plaintiff added as an alternative theory[3] that he was wrongfully discharged and included a cause of action under Law 80. Plaintiff alleged that by December of 1998, Plaintiff had a professional relationship[4] with Defendant, which the Court undertakes as an employment relationship; that Plaintiff received a set compensation for his services as a sales representative of Defendant; that his compensation included benefits such as health insurance and sick and vacation leave; and that Plaintiff was terminated from such employment on April of 2012 without just cause. Plaintiff further added that when asked about the reason for his termination, Defendant gave no reason except to clarify that the reasons were unrelated to Plaintiff's performance as a sales representative.

In response, and instead of defending against Plaintiff's allegations, Defendant affirmed that Plaintiff stated "facts specifically indicating an employer-employee relationship pursuant to Law 80" (Docket No. 18, page 11) and that Plaintiff received compensation that "is much more akin to an employer-employee relationship under Law 80" (*Id.* at page 6). Further, with

presumably full understanding of the precepts of Law 80, Defendant added on a footnote on the last page of their motion to dismiss, that Defendant denies Law 80 liability; that they are prepared to defend against Plaintiff's allegations of unjust dismissal; and that Defendant will demonstrate that they had sufficient just cause to terminate the parties' relationship. However, no proffer was made as to what is Defendant's defense nor an identification of the justifiable reason for terminating Plaintiff. If such defense is available at this stage of the proceedings, why should Defendant allow the case to continue instead of defending their position in the instant motion to dismiss? To the Court, Defendant is potentially pointing to the application of Law 80. Especially by failing to establish by a preponderance of the evidence that Plaintiff's discharge was for good cause, and by stating in Defendant's prayer for relief that "if [Plaintiff] is entitled to any relief in this matter, it would be pursuant to Law 80." *Id.* at page 9.

## V. CONCLUSION

For the reasons stated above, the Court finds **GRANTS IN PART AND DENIES IN PART** Defendant's motion to dismiss. The motion to dismiss is **GRANTED** as to Plaintiff's causes of action under Law 21 and it is **DENIED** as to Plaintiff's causes of action under Law 80.

**IT IS SO ORDERED.**

---

3. Rule 8(e)(2) of the Federal Rules of Civil Procedures permit pleading of inconsistent theories in a single action. This is particularly the case at the early stages of litigation, not so at late stages when the parties must chose

the legal theory they are pursuing approaching the trial. *See Rodriguez–Suris v. Montesinos,* 123 F.3d 10, 20–21 (1st Cir.1997).

4. See note 1, *ante.*