SAN JUAN MERCANTILE CORPORATION, demandante, *v.* CANADIAN TRANSPORT CO., LTD., demandada.

*Número:* O-78-97      *Resuelto:* 28 de diciembre de 1978

212

*Emilio Rodríguez Colón,* abogado de la demandante; *Fiddler, González & Rodríguez* y *Julio M. Rodríguez,* abogados de la demandada.

EL JUEZ ASOCIADO SEÑOR TORRES RIGUAL emitió la opinión del Tribunal.

El presente caso sirve de complemento a *J. Soler Motors* v. *Kaiser Jeep Int'l,* 108 D.P.R. 134 (1978), en lo referente al alcance de los términos "distribuidor" y "contrato de distribución" estatuidos en la Ley de Contratos de Distribución, Ley Núm. 75 de 24 de junio de 1964, 10 L.P.R.A. sec. 278.

Se trata de un proceso de certificación mediante el cual la Corte de Distrito de los Estados Unidos para el Distrito de Puerto Rico nos solicita que determinemos si el contrato otorgado entre la San Juan Mercantile Corporation y Canadian Transport Co., Ltd., está o no cubierto por dicha ley. La certificación incluye otras cuestiones relacionadas con la constitucionalidad de dicha ley, a saber, si de ser aplicable la Ley Núm. 75 al contrato en cuestión su aplicación constituiría un menoscabo de las obligaciones contractuales en violación del Art. I, Sec. 10 de la Constitución de los Estados Unidos y el Art. II, Sec. 7, de la Constitución del Estado Libre Asociado de Puerto Rico; si la medida de los daños y la definición del término "justa causa" priva a Canadian Transport Co., Ltd., de su propiedad sin el debido proceso de ley; si dicha ley viola la cláusula constitucional sobre la igual protección de las leyes y si impone una carga irrazonable al comercio interestatal y al comercio extranjero protegido por el Art. I, Sec. 8 de la Constitución de los Estados Unidos. No es necesario que abordemos estas cuestiones en vista de nuestra conclusión al efecto de que la Ley Núm. 75 no es de aplicación por no ser dicho contrato uno de distribución.

Las partes estipularon los hechos pertinentes a la cuestión certificada que aquí consideramos:

■ San Juan Mercantile Corp. se desempeña como agente de barcos extranjeros y de los Estados Unidos a cargo de las operaciones de carga y descarga y Canadian Transport Co., Ltd., es una firma marítima canadiense que opera una línea de barcos de carga y transporta madera al mercado de Puerto Rico. Por muchos años la firma Wilford & McKay, Inc., sirvió de agente general de la Canadian Transport en Puerto Rico hasta que en el 1972 fue reemplazada por otra firma. En su carácter de agente general gestionó los servicios de San Juan Mercantile para que ésta se encargara de las operaciones de descarga de los barcos de Canadian Transport. A tales efectos otorgaron un contrato en virtud del cual San Juan Mercantile asumió las obligaciones de suplir el servicio de descarga de los barcos, proveer el personal, equipo y maquinaria necesario para estas operaciones, despachar la madera y entregarla a los consignatarios y a rendir las cuentas de desembolso. Como un servicio adicional, la San Juan Mercantile tenía a su cargo el atender la llegada a puerto de los barcos, haciendo los arreglos necesarios con los prácticos y remolcadores, y tramitar la documentación relativa a las aduanas. Estos servicios se designan en el tráfico marítimo como *husbandry agency*. El contrato fijaba la compensación convenida por tales servicios. La carga no pertenecía a la San Juan Mercantile sino a una tercera persona quien tenía designado un agente en Puerto Rico.

En diciembre de 1972 Canadian Transport notificó a San Juan Mercantile la terminación del contrato de servicio de descarga ofreciéndole la oportunidad de continuar prestando los servicios de *husbanding agent,* pero ésta declinó la oferta y procedió a instar demanda al amparo de la Ley Núm. 75, *supra,* reclamando daños por la terminación sin justa causa del contrato. El pleito fue trasladado a la Corte Federal, y, en virtud del procedimiento de certificación establecido en la Regla 53 de las de Procedimiento Civil, 32 L.P.R.A. Ap. II,

Rs. 53.1 y 53.4, procedemos a determinar la cuestión certificada.

█ La Ley Núm. 75, *supra*, contiene una definición de los términos "distribuidor" y "contrato de distribución", pero, según veremos a continuación, ésta resulta muy esquemática y es necesario delimitar su contenido a la luz de los fines que persigue el estatuto. El Art. 1 de dicha ley provee:

"(a) Distribuidor: persona realmente interesada en un contrato de distribución por tener efectivamente a su cargo en Puerto Rico la distribución, agencia, concesión o representación de determinada mercancía o servicio.

(b) Contrato de Distribución: relación establecida entre un distribuidor y un principal o concedente, mediante la cual, e irrespectivamente de la forma en que las partes denominen, caractericen o formalicen dicha relación, el primero se hace real y efectivamente cargo de la distribución de una mercancía, o de la prestación de un servicio mediante concesión o franquicia, en el mercado de Puerto Rico. . . ." Art. 1, 10 L.P.R.A. sec. 278.

█ La figura del distribuidor se identifica fundamentalmente por su gestión de crear un mercado favorable y conquistar una clientela para un producto o servicio mediante la promoción y conclusión de contratos de ventas. Su función comprende generalmente las actividades necesarias para la transferencia del fabricante al consumidor, o a algún punto intermedio entre ambos, de los productos o servicios que representa. *Cf. J. Soler Motors* v. *Kaiser Jeep Int'l*, supra. La publicidad, la coordinación del mercado, las entregas de mercancía, los cobros, el mantenimiento de inventario y principalmente la promoción y conclusión de contratos de ventas son en términos generales obligaciones del distribuidor. Véanse Garrigues: *III Tratado de Derecho Mercantil*, Vol. 1 pág. 544 (1963) y Estrella Arturo, Dr.: *El Contrato de Agencia o Representación Comercial*, 31 Rev. C. Abo. P.R. 248, escolio 19 (1970).

█ Es precisamente la creación del mercado y la conquista de una clientela lo que constituye el fundamento jurí-

dico para la indemnización al distribuidor por la terminación arbitraria del contrato. Garrigues expone dicho fundamento en la forma siguiente:

"Para comprender esta justificación es necesario puntualizar el sentido que tiene en nuestro caso la indemnización. No se trata de una indemnización por incumplimiento de obligación contractual, la cual seguiría las normas propias del incumplimiento contractual. Tampoco se trata de una indemnización de carácter social inspirada en el deseo de proteger al trabajador como parte económicamente débil. Se trata más bien de una compensación de servicios realmente prestados por el agente. En efecto, la actividad del agente durante el contrato tiene generalmente como resultado la conquista de nuevos clientes. Pero esta nueva clientela es tanto del agente como del representado y en este sentido constituye un elemento del activo tanto de la empresa del uno como de la empresa del otro. Esto se ve claro cuando se extingue el contrato de agencia. En tal momento puede ocurrir una de estas dos cosas: o bien que los clientes permanezcan con el empresario representado perdiéndolos el agente; o bien que continúen vinculados al agente, el cual seguirá vendiéndoles, o bien por cuenta propia, o bien por cuenta de un nuevo empresario. Si ocurre lo primero, parece justo conceder al agente una indemnización que le compense de la pérdida del premio sobre las operaciones con una clientela que fue conquistada por él. En tal carácter se parece mucho esta compensación a la que reciben los agentes de seguros por el llamado 'valor de cartera'." Garrigues: *Tratado de Derecho Mercantil,* Tomo III, Vol. 1, pág. 576 (1963).

■ La Ley Núm. 75, *supra,* fue diseñada expresamente con el propósito de remediar los perjuicios causados por las prácticas abusivas de manufactureros que eliminaban arbitrariamente a los distribuidores tan pronto éstos creaban un mercado favorable a sus productos y servicios. *Warner Lambert Co.* v. *Tribunal Superior,* 101 D.P.R. 378 (1973). Al respecto la Exposición de Motivos de dicha ley expone:

"El Estado Libre Asociado de Puerto Rico no puede permanecer indiferente al creciente número de casos en que empresas domésticas y del exterior, sin causa justificada, eliminan sus distribuidores, concesionarios o agentes, o sin eliminarlos totalmente van gradualmente mermando y menoscabando el alcance

de las relaciones previamente establecidas, tan pronto como dichos distribuidores, concesionarios o agentes han creado un mercado favorable y sin tener en cuenta sus intereses legítimos . . . ."

Los informes de las comisiones legislativas que precedieron a la aprobación de la ley expresan la misma preocupación. Véase Vol. 18, parte 3, *Diario de Sesiones* 1531 (1964).

■ Con estas consideraciones el problema de interpretación que dio motivo a la certificación de la cuestión aquí envuelta se disipa y queda claro que el distribuidor protegido por la Ley Núm. 75, *supra,* es aquel que gestiona la creación de un mercado o conquista nueva clientela para un producto o servicio mediante la promoción y conclusión de contratos de ventas.

Esta conclusión excluye a San Juan Mercantile Corp. del ámbito protector de la Ley Núm. 75, *supra.* La estipulación de hechos anteriormente reseñada demuestra que esta sólo presta un servicio sin duda importante y valioso para Canadian Transport Co., Ltd., pero no genera en forma alguna un mercado ni conquista clientela mediante promoción y venta.