EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Wilfredo Cruz Marcano<br><br>   Peticionario<br><br>v.<br><br>Rafael Sánchez Tarazona y<br>Brenda Ramos Ortiz<br><br>   Recurridos | Certiorari<br><br>2007 TSPR 198<br><br>172 DPR \_\_\_\_ |

Número del Caso: CC-2006-42


Fecha: 8 de noviembre de 2007


Tribunal de Apelaciones:

Región Judicial de Caguas-Panel XI

Juez Ponente:

Hon. Andrés Salas Soler


Abogado de la Parte Peticionaria:

Lcdo. Javier Rivera Longchamps


Abogado de la Parte Recurrida:

Lcdo. Luis Ramón Rodríguez Cintrón


Materia: Ley Núm. 21 de 5 de diciembre de 1990 sobre contratos de
        representantes de ventas

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Wilfredo Cruz Marcano

    Peticionario

       v.

Rafael Sánchez Tarazona y
Brenda Ramos Ortiz

    Recurridos

CC-2006-42

Opinión del Tribunal emitida por la Juez Asociada señora Rodríguez Rodríguez

San Juan, Puerto Rico, a 8 de noviembre de 2007

El presente caso nos brinda la oportunidad de delimitar el ámbito de aplicación de la Ley núm. 21 de 5 de diciembre de 1990 sobre contratos de representantes de ventas, 10 L.P.R.A. secs. 279-279h.

I

A

Las partes en este caso disputan si el demandante-peticionario, el señor Wilfredo Cruz Marcano (señor Cruz Marcano), sostuvo una relación de principal-representante de ventas con los demandados-recurridos, la señora Brenda Ramos Ortiz y el señor Rafael Sánchez Tarazona. En vista de que el Tribunal de Primera Instancia resolvió el presente caso mediante el mecanismo de sentencia sumaria,

expondremos los hechos pertinentes según aparecen consignados en las determinaciones de hechos del foro primario, las estipulaciones de las partes y las transcripciones de las deposiciones que obran en autos.

B

Los recurridos operan un negocio de manufactura, impresión y venta de ropa bajo el nombre Artee Designers. En el año 1994, el demandante-peticionario comenzó a fungir como vendedor de ciertas líneas de ropa (camisas y pantalones) que los demandados-recurridos manufacturan. Sin embargo, las partes no otorgaron un contrato escrito que recogiera los términos de su relación comercial. Según los términos del acuerdo verbal de las partes, el señor Cruz Marcano recibía una comisión de 5% por cada venta. *Véase* apéndice del recurso de *certiorari*, pág. 129.

El 9 de noviembre de 1998, el señor Cruz Marcano presentó una demanda y solicitud de interdicto provisional contra la señora Ramos Ortiz y el señor Sánchez Tarazona. Reclamó la indemnización provista por la Ley núm. 21, en caso de que un principal termine sin justa causa el contrato de un representante de ventas. En su demanda, alegó que durante el mes de octubre de 1998 los demandados-recurridos le notificaron su decisión de prescindir de sus servicios como representante exclusivo de varias de líneas de ropa, incluyendo la línea denominada Mano Sport.

Celebrada la vista de interdicto, el Tribunal de Primera Instancia denegó dicho remedio y ordenó la

continuación de los procedimientos por la vía ordinaria. Luego de una serie de trámites procesales, los demandados-recurridos presentaron una moción de desestimación y, posteriormente, una moción de sentencia sumaria. El 30 de agosto de 1999, el Tribunal de Primera Instancia denegó ambas solicitudes.

Posteriormente, los demandados-recurridos presentaron una segunda moción de sentencia sumaria fechada el 24 de abril de 2002. Alegaron que no existía controversia en torno a que el señor Cruz Marcano no era un representante de ventas según la definición de la Ley núm. 21, por lo que no tenía una causa de acción bajo dicho estatuto. Por su parte, el demandante-recurrido presentó su oposición a la moción de sentencia sumaria de los demandados y solicitó que el tribunal dictara sentencia sumaria a su favor.

Así las cosas, el 30 de agosto de 2004, el Tribunal de Primera Instancia dictó una escueta orden –notificada el 7 de septiembre de 2004– en la que declaró ha lugar la moción de sentencia sumaria presentada por los demandados-recurridos. Ante ello, el demandante-peticionario solicitó que el tribunal de instancia aclarase su orden. El 28 de octubre de 2004, el tribunal dictó una segunda orden en la cual señaló una audiencia en su fondo. Sin embargo, el 28 de junio de 2005, dictó sentencia sumaria desestimando la demanda.

En síntesis, el foro primario determinó que los siguientes hechos no estaban en controversia: las partes no

otorgaron un contrato escrito; según el acuerdo de las partes, el demandante gestionaba órdenes de venta de la mercancía de los demandados a cambio de una comisión de 5% que el demandante cobraba cuando los demandados manufacturaran y entregaran la mercancía; el demandante no compraba los productos para revenderlos, no mantenía un inventario de la mercancía, no tenía empleados ni instalaciones de almacén; de ordinario no tenía la responsabilidad de cobrar la mercancía que vendía, no se encargaba de la entrega de mercancía ni de los costos de acarreo; no controlaba los precios o las ventas a crédito; y no respondía por devoluciones de mercancía, asunto que era responsabilidad de los demandados.

Por otra parte, según estableció el tribunal de instancia, los demandados-recurridos aprobaban las ventas a crédito o plazos, aprobaban los pactos de venta, controlaban los precios y la producción, eran los dueños del inventario y de la maquinaria de producción y sufragaban los costos de entrega de mercancía, de promoción de la mercancía y los gastos de viajes al exterior relacionados al negocio. Finalmente, el tribunal determinó que no estaba en controversia que Artee Designers tenía otros vendedores, mantenía clientes propios y que el demandante no atendía a todos los clientes de la demandada. *Véase* apéndice del recurso de *certiorari* págs. 129-31.

A la luz de los hechos antes detallados, el Tribunal de Primera Instancia concluyó que el señor Cruz-Marcano no

era un representante de ventas protegido por la Ley núm. 21. Como cuestión de derecho, aplicó los criterios que adoptáramos en *Roberco, Inc. y Colón v. Oxford Ins., Inc.*, 122 D.P.R. 115 (1998), al amparo de la protección que la Ley núm. 75 provee en caso de terminación sin justa causa de un contrato de distribución. El foro primario entendió que la Ley núm. 21 es una "variante" de la Ley núm. 75 y equiparó ambas figuras -distribuidor y representante de ventas-. A raíz de ello, concluyó que el demandante no era un representante de ventas puesto que no controlaba los precios, las condiciones de venta, no asumía riesgos comerciales, no asumía los gastos de producción o entrega de la mercancía, no compraba la mercancía y no mantenía instalaciones para su operación. Además, determinó que el demandante-peticionario no era el único vendedor ni atendía a todos los clientes de los demandados-recurridos, por lo que no era un representante exclusivo de los demandados, rasgo necesario para ser acreedor de la protección provista por la Ley núm. 21.

Inconforme, el demandante-peticionario recurrió al Tribunal de Apelaciones. Dicho foro apelativo intermedio confirmó la determinación recurrida. Adujo que no existían controversias de hechos que impidieran dictar sentencia sumaria y que el demandante no detalló adecuadamente los hechos que estimaba estaban en controversia ya que se limitó a argumentar la cuestión de derecho, a saber: si era un representante de ventas protegido por la Ley núm. 21.

El Tribunal de Apelaciones concluyó que las circunstancias del caso indicaban que el demandante no era un representante de ventas puesto que no asumió los gastos asociados a la labor de **crear un mercado** para los demandados mediante gestiones de venta, promoción y mercadeo de la mercancía que vendía. Resaltó que el demandante no incurría en gastos relacionados a la operación de una oficina y salón de exhibiciones ni en gastos de viajes, representación, muestrarios y patentes municipales. Más aún, el Tribunal de Apelaciones entendió que el demandante era un vendedor a comisión o viajante comisionista que, según dicho tribunal, no goza de protección bajo la Ley núm. 21.

Oportunamente, el demandante-peticionario presentó recurso de *certiorari* ante este foro. En esencia, cuestiona la determinación del foro apelado sobre la ausencia de controversias de hechos. Además, arguye que erró el foro apelativo intermedio al aplicar al representante de ventas las características que distinguen a un distribuidor.

El 31 de marzo de 2006 expedimos el auto. Con el beneficio de la comparecencia de las partes procedemos a resolver la controversia que nos ocupa.

II

La presente es la primera ocasión en que analizamos las disposiciones de la Ley núm. 21 sobre los contratos de representantes de ventas. Dicho ejercicio de interpretación requiere precisar los rasgos distintivos de

diversos intermediarios comerciales que colaboran con un principal en la consecución de los fines de su empresa. Específicamente, debemos perfilar las diferencias entre dos intermediarios o colaboradores comerciales tutelados en nuestro ordenamiento: el representante de ventas y el distribuidor de mercancías o servicios. Ambos participan en las actividades comerciales de intermediación entre el productor de una mercancía y el consumidor y reciben protección estatutaria frente al cese unilateral de sus contratos; el distribuidor, mediante la Ley núm. 75, y el representante de ventas, mediante la Ley núm. 21.

A

"En el ejercicio y desarrollo de la empresa, cualesquiera que sean las ambiciones y dimensiones de ésta, necesita valerse el empresario del concurso de otras personas que le ayuden a conseguir los fines previstos". R. Uría, *Derecho Mercantil*, 12ma ed., Madrid, 1982, pág. 45. Así, el empresario se rodea de auxiliares[1] o intermediarios que colaboran en el proceso de colocar una mercancía o servicio en el mercado.

---

[1] Sobre los auxiliares del comercio indica el comentarista Garrigues: "[t]oda persona que, en virtud de un contrato, queda obligada a realizar una prestación o periódicas prestaciones a favor de un comerciante, viene por este hecho a auxiliarle en su comercio…. Pero estas personas no se proponen exclusivamente ser auxiliares de un comerciante; antes bien, son ellas por sí comerciantes substantivos, cuyo género no se opone, sino que coordina o subordina, al de otros comerciantes. Más que auxiliares del comerciante son auxiliares del comercio". J. Garrigues, *Curso de Derecho Mercantil, 7ma ed.,* Madrid, 1976*,* pág. 658.

En virtud del desarrollo polifacético de las relaciones comerciales, podemos identificar diversos tipos de acuerdos mercantiles entre un principal y un auxiliar o intermediario. En general, se trata de contratos cuyo fin es ampliar el mercado y clientela de los productos de un principal. *Véase,* E. Chuliá Vicent & T. Beltrán Alandete, *Aspectos jurídicos de los contratos atípicos,* España, Ed. Bosch, 1995, vol. 2, Cap. II, pág. 333; Cap. III, pág. 379. Como ejemplos de ellos podemos identificar el contrato de distribución y de representante de ventas (agencia).

B

Existe consenso en la doctrina mercantil en torno a las características básicas de la figura del agente y del contrato mercantil que le da vida a su función de intermediario comercial. El "contrato de agencia es aquel por el cual un empresario de manera permanente, mediante una remuneración y con una cierta independencia, asume el cargo de preparar o realizar contratos mercantiles por cuenta de otro empresario". F. Sánchez Calero, *Instituciones de Derecho Mercantil*, 9na ed., Madrid, Ed. Revista de Derecho Privado, 1982, pág. 378. Según la referida doctrina, el contrato de agencia se concreta entre dos empresarios independientes y engendra un vínculo comercial continuo y estable en el cual el "agente es titular de su propia empresa y la prestación de su trabajo no se realiza de modo subordinado". R. Uría, *op. cit.,* pág. 555. *Véanse además Id.*, págs. 378-79.; J. Garrigues,

*Curso de Derecho Mercantil, op. cit.*, págs. 120-24; A. Estrella, *El contrato de agencia o representación comercial: naturaleza de la relación-la terminación del contrato*, 31 Rev. Col. Abog. P.R. 241 (1970).

Según indica Rodrigo Uría, generalmente, la compensación del agente "consiste en un porcentaje sobre el importe de las operaciones que realice". R. Uría, *op. cit.*, pág. 556. Además, en este tipo de contrato, es de uso común que el principal le asigne una zona territorial al agente junto a una concesión de exclusividad que se puede configurar a favor del agente o del principal. *Id.*, pág. 557.

Por otro lado, el comentarista Joaquín Garrigues postula que el elemento de organización es decisivo para considerar a una persona como agente. Garrigues, *Tratado de Derecho Mercantil*, Madrid, Revista de Derecho Mercantil, 1963, T. III, V. 1, págs. 540-41. Sobre ello indica que:

> "[e]sta organización [del agente] puede ser muy primitiva (puede consistir, por ejemplo en la instalación de una pequeña oficina unida a veces a la propia vivienda del agente, o incluso tan sólo la colocación en la puerta de su domicilio de una placa indicativa de la profesión) o, por el contrario, constituir una organización más compleja (así ocurre cuando existen locales de exposición, organización de ventas con personal auxiliar propio, propaganda propia y clientela propia que confía sus encargos siempre al mismo agente)".

*Id.*, pág. 541. *Véase además,* A. Estrella, *supra*, pág. 246.

En *Roberco v. Oxford, supra*, pág. 123, aclaramos que los contratos de distribución y de agencia comparten ciertas características puesto que "ambos son contratos

entre empresarios mercantiles independientes, de continuidad o duración fija o indeterminada[y][,] [m]ediante los mismos se impone[n] al distribuidor o agente obligaciones de amplia y extensa actividad de promoción y venta".[2] (Citas omitidas).

Nuestro Código de Comercio no regula el contrato de agencia. Ello lo convierte en un contrato atípico a los fines del Código de Comercio.[3] Sin embargo, como veremos, la Ley núm. 21 de 1990, regula de forma esquemática un tipo de contrato de agencia: el contrato de representante de ventas. Por otro lado, la Ley núm. 75 reglamenta los contornos básicos del contrato de distribución, el cual,

---

[2] No existe unanimidad de criterio en torno a la clasificación y distinción entre los contratos de distribución y de agencia. Así, algunos comentaristas indican que:

> [e]l agente, aunque es un comerciante independiente, tiene la función de promover la venta de bienes del productor y de disponer todo lo necesario para concertarlas entre éste y el consumidor. A diferencia del concesionario o del franquiciado, no compra los productos para revenderlos y obtener como lucro la diferencia entre el costo y el precio de venta; el lucro del agente está dado por la comisión que le reconoce el productor. [Por otro lado],[e]l distribuidor adquiere el producto a nombre y por cuenta propia, para enajenarlo a otros comerciantes o a los consumidores, y lucrar con la diferencia.

H. Llobera, *Contrato de concesión comercial*, Buenos Aires, Ed. Astrea, 2006, págs. 89-90.

[3] A pesar de que el Código de Comercio español, del cual proviene el nuestro, tampoco reglamenta el contrato de agencia, en el año 1992, el legislador español aprobó la ley 12/1991, de 27 de mayo sobre contrato de agencia (BOE 25/5/92). *Véase* E. Chuliá Vicent & T. Beltrán Alandete, *Aspectos jurídicos de los contratos atípicos,* España, Ed. Bosch, 1995, vol. 2, Cap. III., págs. 379-401.

como indicamos, comparte ciertas características con el contrato de agencia.

III

Es norma reiterada que la Ley núm. 75 crea una causa de acción a favor de un distribuidor frente a la terminación sin justa causa de su contrato. *B.W.A.C. Int'l v. Quasar Co.*, 138 D.P.R. 60 (1995). En varias ocasiones hemos examinado la figura del distribuidor a los fines de distinguirlo de otros intermediarios comerciales que no gozan de protección bajo la Ley núm. 75. *Véanse Lorenzana v. Gen. Accid. Ins. Co.,* 154 D.P.R. 547 (2001); *Oliveras, Inc. v. Universal Ins. Co.,* 141 D.P.R. 900 (1996); *Cobos Liccia v. De Jean Co., Inc.,* 124 D.P.R. 896 (1989); *Roberco v. Oxford, supra*; *Medina & Medina v. Country Pride Foods*, 122 D.P.R. 172 (1988); *Pacheco v. Nat'l Western Life Ins. Co.,* 122 D.P.R. 55 (1988); *Córdova & Simonpietri v. Crown American* 112 D.P.R. 797 (1982); *J. Soler Motors v. Kaiser Jeep Int'l*, 108 D.P.R. 134 (1978); *San Juan Merc. v. Canadian Transport Co.,* 108 D.P.R. 211 (1971).

En dicha trayectoria jurisprudencial hemos aclarado que un distribuidor es "un empresario mercantil independiente que ha establecido una relación de continuidad y duración fija o indeterminada, con otro empresario principal para la distribución de un producto o servicio". *Roberco v. Oxford, supra*, pág. 131. Ello, con el propósito de crear un mercado para el principal y

atraer nueva clientela para su producto o servicios. *Véase Lorenzana v. Gen. Accid. Ins. Co., supra*, pág. 553.

A los fines de delinear los rasgos que distinguen al distribuidor de otros intermediarios del comercio que no gozan de la protección provista por la Ley núm. 75, establecimos en *Roberco* que es menester examinar si éste: 1) promueve y concluye contratos; 2) adquiere inventario; 3) ejerce control sobre los precios; 4) tiene discreción en cuanto a pactar los términos de las ventas; 5) tiene responsabilidad por la entrega y cobro de la mercancía o servicio; 6) tiene autoridad para conceder crédito; 7) lleva a cabo gestiones, independientes o conjuntas, de publicidad; 8) ha asumido el riesgo y responsabilidad en la gestión que realiza; 9) compra el producto; y 10) tiene facilidades físicas y ofrece servicios relacionados con el producto a sus clientes. *Roberco v. Oxford, supra,* págs. 131-32. *Véase además, Lorenzana v. Gen. Accid., supra*, pág. 555.

Tomando en cuenta la conjunción de los criterios antes mencionados, hemos enfatizado que la Ley núm. 75 protege al distribuidor por la creación del mercado y la conquista de clientela mediante esfuerzos de publicidad, entregas, mercadeo, cobros, promoción y mantenimiento de inventario. *Véase San Juan Merc. v. Canadian, supra*, pág. 215. Sin embargo, también hemos aclarado que no fue la intención del legislador extender la protección de la Ley núm. 75 a todo intermediario del comercio. *Roberco v. Oxford, supra,* pág.

131. Conforme a ello, indicamos en *Roberco* que para considerar al "auxiliar como 'distribuidor' no basta un mero contacto con el producto en el camino de éste pasar del fabricante o suplidor al consumidor; hace falta algo más". *Id.*

En *Roberco,* analizamos la figura mercantil del viajante; intermediario cuya labor es *"ensanchar constantemente el círculo de operaciones de la empresa, conservando, renovando y aumentando en lo posible la clientela". Id., págs. 128-29.* (citando a J. Garrigues, *Curso de Derecho Mercantil*, 7ma ed., Madrid, Ed. Aguirre, 1976, T. 1, pág. 52). Al distinguir entre el distribuidor y el viajante, concluimos que este último no gozaba de protección bajo la Ley núm. 75 puesto que no asume el mismo riesgo comercial de un distribuidor y no "incurre en los gastos e inversiones que normalmente acarrea la distribución de un producto o servicio…". *Id.,* págs. 130. *Véase además Lorenzana v. Gen. Accid. Ins. Co., supra*, pág. 555.[4]

---

[4] En casos posteriores al amparo de la Ley núm. 75 hemos reiterado la distinción entre el distribuidor protegido por la Ley núm. 75 y el viajante que no encuentra cabida en dicho estatuto. *Cobos Liccia v. De Jean Co., supra; Lorenzana v. Gen. Accid. Ins. Co., supra.* Concluimos en *Lorenzana* que el agente de seguros en dicho caso no era un distribuidor a los efectos de la Ley núm. 75 puesto que no tenía potestad para concluir contratos de seguros; no ejercía control sobre los términos de los contratos; no podía cancelar o renovar las pólizas; no tenía derecho a recibir primas a su nombre; no podía nombrar agentes de seguros; no concedía crédito; y no asumía el riesgo de su gestión. Además, aclaramos que un distribuidor debe hacer más gestiones de promoción que las asociadas a un vendedor. *Lorenzana v. Gen. Accid. Ins. Co., supra.*

En fin, en el pasado hemos esbozado las diferencias entre un viajante y un distribuidor con el propósito de concretar el ámbito de aplicación de la Ley núm. 75, estatuto que protege a los distribuidores y no a otros tipos de intermediarios. Por tanto, hasta el año 1990, existió un laguna estatuaria que tuvo el efecto de negarle protección a ciertos intermediarios comerciales, tales como los representantes de ventas o, como los denominamos en *Roberco*, viajantes independientes.

IV

A

Siendo consciente de nuestros pronunciamientos sobre las características del distribuidor al amparo de la Ley núm. 75, el legislador puertorriqueño aprobó la Ley núm. 21 con "el propósito de hacer justicia… al representante de ventas…". Exposición de motivos, Ley núm. 21 de 5 de diciembre de 1990, 1990 Leyes de Puerto Rico 1483. A través de dicho estatuto, el legislador extendió a los representantes de ventas una protección análoga a la que los distribuidores poseen bajo la Ley núm. 75. La exposición de motivos de la Ley núm. 21 plasma sin ambages los propósitos que dicho estatuto persigue:

> A tenor con lo establecido en el caso … *Roberco Colón y Oxford Industries, Inc.,* 88 J.T.S. 102 (1988), la Ley Núm. 75 que reglamenta los contratos de distribución no cubre a los representantes de ventas. Estos intermediarios del comercio no tienen en la actualidad protección legal alguna.

_____

> A pesar de todo el servicio que el representante de ventas rinde al principal, el primero no recibe otra compensación que no sea una comisión, sobre la cual no ejerce ningún control; está expuesto a que sin justa causa le cesen una línea de representación y finalmente está expuesto, por razón de su trabajo, que requiere su intervención directa y constante, a accidentes o enfermedades prolongadas que afecten las ventas y que eventualmente provoque su remoción como representante, sin compensación alguna.
>
> La presente ley tiene el propósito de hacer justicia a ese agente comercial que es el representante de ventas, ofreciéndole medidas de protección cónsonas con la importancia de su gestión.

*Id.*, págs. 1482-83.

Preocupado por los "casos en que empresas domésticas o extranjeras, sin causa justificada, eliminan los representantes de fábrica, empresarios mercantiles independientes del principal, tan pronto éstos han creado un mercado favorable y han conquistado una clientela…", Informe del P. del S. 793, *pág. 13*, el legislador aprobó la Ley núm. 21 como una medida de protección para los representantes de ventas que no gozaban de protección bajo la Ley núm. 75. De esta forma, le extendió a otro intermediario del comercio una protección en caso de la cancelación sin justa causa de su contrato.

A grandes rasgos, la Ley núm. 21 prohíbe que un principal dé por terminada la relación comercial con su representante de ventas o que realice actos que la menoscabe sin tener justa causa para ello. 10 L.P.R.A. sec. 279a. Además, provee para el pago de daños al representante de ventas en todo caso en el que no haya

mediado justa causa para el cese o menoscabo de la relación. *Id*., secs. 279b-c. Sin embargo, al igual que ocurre con la Ley núm. 75, la Ley núm. 21 provee una definición esquemática sobre los términos representante de ventas y contrato de representante de ventas y no delimita los elementos distintivos de este tipo de agente. *Id*., sec. 279. Por tanto, nos corresponde concretar su significado.

B

Según la Ley núm. 21, el representante de ventas es un "empresario independiente que[,] con **carácter de exclusividad**, establece un contrato de representación de ventas con un principal o concedente, concediéndole un territorio o mercado definido, dentro del Estado Libre Asociado de Puerto Rico. Incluye la figura conocida como representante de fábrica". *Id*., sec. 279(a). (énfasis nuestro). Por otra parte, la Ley núm. 21 define el contrato de representante de ventas como

> [e]l convenio establecido entre un representante de ventas y un principal, mediante el cual e independientemente de la forma en que las partes denominen, caractericen o formalicen dicho convenio, el primero se compromete a realizar un esfuerzo razonable y la debida diligencia en la creación o expansión de un mercado favorable para los productos que vende el principal dirigido a conquistar clientela para ofrecerle un producto o servicio mercadeado por él en Puerto Rico y el segundo se obliga a cumplir con los compromisos resultantes del esfuerzo y coordinación del representante de ventas y al pago de una comisión o remuneración previamente pactada.

10 L.P.R.A. sec. 279(c).

Acorde con las definiciones de la Ley núm. 21, el representante de ventas es un agente que, con **carácter de exclusividad**, promueve y tramita contratos a favor de su principal con el propósito de ampliar el mercado y clientela del principal. Así, el representante de ventas se encarga de persuadir al cliente para que concluya un contrato. Sin embargo, las definiciones esquemáticas de la Ley no nos permiten determinar con claridad quiénes deben calificar como representantes de ventas y cuáles son las implicaciones del requisito de exclusividad. Por tanto, debemos recurrir al historial legislativo de la medida para identificar los elementos que el legislador consideró distinguen a esta figura de otros intermediarios del comercio tales como el distribuidor.

En primer lugar, en la exposición de motivos de la Ley núm. 21 el legislador ejemplificó los gastos comúnmente asociados a un representante de ventas. Éstos son: gastos de "oficina, salón de exhibición, automóvil, personal de oficina, teléfono, electricidad y agua, seguros (médico, de vida, social), gastos de viaje, gastos de representación, pago de muestrarios, materiales de oficina y patentes municipales". Exposición de motivos, Ley núm. 21, 1990 Leyes de Puerto Rico, 1482. Además, dicha exposición de motivos resalta que, a pesar de que la labor de representante de ventas conlleva una serie de gastos operacionales, éste "no controla ninguna de las variantes comerciales para realizar el negocio que le asignan sus

principales, como por ejemplo devoluciones de mercancía, cuotas, cuentas y territorio", *Id.*, y tampoco "controla el derecho de vender, negociar o ceder sus líneas, ni por sucesión, retiro o muerte". *Id.*

En segundo lugar, el informe del Proyecto del Senado 793 indica que el representante de ventas "ejerce una industria independiente coordinada a la del comerciante…", por lo que no existe una subordinación jerárquica. Informe del P. del S 793, pág. 12. "Es dueño de su negocio y lo organiza en forma tal que queda libre para establecer relaciones con otros empresarios principales y aunque éstos cambien, la organización propia del representante permanece". *Id.* En virtud de este contrato, "se establece[] una relación de continuidad… y el representante realiza una inversión de capital o esfuerzo… dirigida a conquistar clientela y servirle bien…" al principal. *Id.*

Como vemos, el representante de ventas protegido por la Ley núm. 21 mantiene un contrato de agencia con el principal. En esta relación comercial utiliza su conocimiento y experiencia para promover los productos del principal y tramitar órdenes a su favor. Al igual que el distribuidor, es un empresario independiente cuya labor persigue aumentar el mercado y la clientela del principal. Sin embargo, mientras el distribuidor usualmente adquiere y mantiene inventario; controla los precios de los productos que vende y de ese precio obtiene su ganancia; concede créditos; compra el producto; entrega y cobra la

mercancía; realiza esfuerzos extensos de publicidad; asume el riesgo de su gestión; tiene facilidades; y ofrece servicios relacionados con el producto, la función del representante de ventas es un tanto más limitada.

El representante de ventas tramita contratos u órdenes a nombre del principal a cambio de una comisión y no asume el riesgo en caso de que el cliente no pague. Su gestión no le requiere comprar el producto ni mantener facilidades de almacenaje pues usualmente remite las órdenes de compra al principal para que éste se la entregue al cliente.[5] *Véase* Andre M. Saltoun & Barbara C. Spudis, *International Distribution and Sales Agency Agreements: Practical Guidelines for U.S. Exporters*, 38 Bus. Law. 883 (1983). Por tanto, no le compete al representante de ventas asumir los gastos de adquisición, entrega o almacenaje de mercancía, características asociadas al distribuidor.

Como bien refleja la exposición de motivos de la Ley núm. 21, los representantes de ventas incurren en ciertos gastos operacionales que, en conjunto, abonan a la presencia de la independencia empresarial característica de este tipo de agente. A modo de ejemplo, el representante

---

[5] En las vistas públicas sobre la medida celebradas el 31 de julio de 1990, el señor Manuel Taboas, Presidente de la Asociación puertorriqueña de representantes de fábrica, aclaró que los distribuidores compran los productos, mantienen inventario y tienen potestad para establecer los términos en cuanto a ventas a crédito, el territorio y el mercado, los representantes de ventas no tienen esa discreción. Además, los distribuidores recuperan su inversión y gastos de operaciones al establecer el precio del producto, mientras que los representantes de ventas no tienen control sobre el producto.

de ventas puede incurrir en gastos de oficina, personal de oficina, gastos de viajes, seguros, automóvil y patentes municipales. Empero, esta lista no contempla todos los gastos en los que puede incurrir un representante de ventas. Tampoco pretende ser una enumeración taxativa de los requisitos con los que debe cumplir un intermediario del comercio para ser acreedor de la protección de la Ley núm. 21.

Es menester resaltar que los gastos operacionales de un representante de ventas varían dependiendo de la naturaleza de su organización, del tipo de producto que promueve y de los compromisos contractuales que mantenga con el principal. Es por ello que sus gastos serán distintos a los de un distribuidor. Así, mientras el distribuidor invierte en campañas publicitarias en los medios de comunicación, *véase Lorenzana v. Gen. Accid. Ins. Co., supra*, pág. 564, los gastos de promoción del representante de ventas se circunscriben, de ordinario, a la interacción con los clientes en sus establecimientos.

En fin, al clasificar a un intermediario comercial como representante de ventas, debemos examinar si se trata de un comerciante independiente que posee una organización comercial propia, ya sea compleja o sencilla. Como guía, se podrá examinar el tipo de remuneración que percibe, los diversos gastos que su actividad comercial conlleva, el modo de operación y organización y la libertad que posea para regir su actividad comercial.

Por otro lado, la Ley núm. 21 exige que el representante de ventas ejerza su función con carácter de exclusividad. Sin embargo, la Ley no define los contornos de la exclusividad y tampoco surge del historial legislativo de ésta los criterios concretos que el legislador consideró al incluir dicho requisitos. El diccionario de la Real Academia Española define el término exclusivo como un "privilegio o derecho en virtud del cual una persona o corporación puede hacer algo prohibido a las demás". Además, una agencia exclusiva "se caracteriza por el hecho de que el agente puede impedir que el empresario representado realice operaciones en la zona reservada a aquél, bien se trate de operaciones realizadas personalmente por el empresario, o bien de operaciones realizadas a través de sus auxiliares o de otros agentes". J. Garrigues, *Tratado de Derecho Mercantil, op. cit.,* pág. 567. Por tanto, en el supuesto de un contrato de representante de ventas cobijado por la Ley núm. 21, el principal no puede por cuenta propia o a través de un tercero realizar los mismos trabajos que le ha conferido al agente. Es decir, no podría operar en el territorio o mercado del agente.

A la luz de lo anterior, somos del criterio que el representante de ventas que goza de protección bajo la ley núm. 21 es precisamente el agente que en el pasado indicamos carecía de protección bajo la Ley núm. 75. Por tanto, será representante de ventas aquel intermediario

comercial que: 1) promueva y tramite de forma exclusiva contratos a nombre de un principal de forma continua y estable; 2) opere en un territorio o mercado definido; 3) tenga a su cargo la labor de crear o expandir el mercado de los productos del principal mediante esfuerzos de promoción; 4) perciba una comisión por sus servicios o una remuneración previamente pactada[6]; y 5) posea independencia empresarial y una organización propia cuya complejidad dependerá del tipo de relación comercial que establezca con el principal y de la naturaleza del producto que representa.

Finalmente, debemos aclarar que el representante de ventas tutelado por la Ley núm. 21 no controla el precio del producto; de ordinario no invierte en la promoción de la mercancía más allá de sus propios esfuerzos dirigidos a vender el producto; no es responsable de la entrega o distribución de la mercancía; no tiene control sobre devoluciones de mercancía, el manejo de cuentas o ventas a crédito; y no tiene potestad de vender o ceder las líneas o mercancías que representa.

V

En el presente caso, el Tribunal de Primera Instancia desestimó sumariamente la demanda. Entendió que el

---

[6] En esta ocasión no nos pronunciamos sobre los diversos tipos de comisión o remuneración que un representante de ventas debe percibir para ser considerado como tal. No obstante, es esencial que la remuneración del representante de ventas no lo convierta en un empleado puesto que entonces no estaríamos ante un empresario independiente, requisito indispensable de este tipo de agente.

demandante no era un representante de ventas protegido por la Ley núm. 21 ya que no controlaba los precios, las condiciones de venta, no asumía riesgos comerciales, no asumía los gastos de producción o entrega de la mercancía, no compraba la mercancía, no mantenía instalaciones para su operación y no era un representante exclusivo de los demandados. El Tribunal de Apelaciones confirmó dicha determinación y entendió que no existían controversias de hechos que impidieran desestimar sumariamente la demanda. Por tanto, nos corresponde examinar si existen controversias de hechos que impidan dictar sentencia sumaria en este caso.

Como es sabido, la sentencia sumaria es un mecanismo procesal que confiere discreción al juzgador para dictar sentencia sin necesidad de celebrar una vista evidenciaria. *Pérez v. El Vocero*, 149 D.P.R. 427 (1999). El principio rector que debe guiar al juzgador en la determinación sobre si procede o no la sentencia sumaria es el sabio discernimiento, ya que mal utilizada, puede prestarse para privar a un litigante de su "día en corte", principio elemental del debido proceso de ley. *Roig Com. Bank v. Rosario Cirino*, 126 D.P.R 613 (1990).

Para que proceda resolver un caso sumariamente, el promovente deberá demostrar: (1) que no hay controversia esencial en cuanto a los hechos y (2) que como cuestión de derecho procede dictar sentencia sumariamente. Regla 36.3 de Procedimiento Civil, 32 L.P.R.A Ap.III, R.36.3. En

virtud de ello, el tribunal debe examinar si de las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hubiere, surge que no hay controversia real sustancial en cuanto a ningún hecho, por lo que sólo resta resolver una controversia de derecho. *Id.*

No empece lo anterior, hemos establecido que no procede resolver un caso por la vía sumaria cuando el tribunal no tiene certeza sobre todos los hechos pertinentes de la controversia. *Sucesión Maldonado v. Sucesión Maldonado*, res. el 9 de noviembre de 2005, 2005 TSPR, 166, 166 D.P.R.___; *Mgmt. Adm. Servs. Corp. v. E.L.A.,* 152 D.P.R. 599, 610 (2000). Toda duda en cuanto a la existencia de una controversia debe resolverse en contra de la parte que solicita la sentencia sumaria. *Vera Morales v. Bravo Colón*, res. el 27 de febrero de 2004, 2004 TSPR 30, 161 D.P.R.___. En virtud de ello, al determinar si existen controversias de hechos que impiden dictar sentencia sumaria, el tribunal debe analizar los documentos que acompañan la solicitud de sentencia sumaria y los documentos incluidos con la moción en oposición, así como los que obren en el expediente del tribunal. *Sucesión Maldonado v. Sucesión Maldonado*, res. el 9 de noviembre de 2005, 2005 TSPR, 166, 166 D.P.R.___; *Vera Morales v. Bravo Colón, supra.*

La parte promovente de una solicitud de sentencia sumaria tiene la obligación de demostrar la inexistencia de

una controversia real sobre todo hecho material esencial, mientras que la parte promovida viene obligada a contestar la solicitud de forma detallada. *Véanse Vera Morales v. Bravo Colón, supra; Audiovisual Lang v. Sist. Est. Natal Hnos.,* 144 D.P.R. 563, 576 (1997). No obstante, el sólo hecho de que la parte promovida no presente evidencia que controvierta la presentada por la parte promovente no implica que la sentencia sumaria procederá automáticamente. *Vera Morales v. Bravo Colón, supra; Jusino v. Walgreens, supra.*

Un estudio de los documentos que obran en autos incluyendo las estipulaciones de las partes, las transcripciones de las deposiciones y la transcripción de la vista de interdicto preliminar celebrada en el caso, nos convence de que existen controversias de hechos que impiden determinar por la vía sumaria si el demandante cumple con los requisitos que indicamos un representante de ventas debe poseer. Veamos.

En el presente caso, no existe controversia en torno al hecho que, en virtud de un contrato verbal, el demandante-peticionario realizaba gestiones de ventas de ciertos productos de los demandados-recurridos –en particular la línea Mano Sport–. Ello, a cambio de una comisión de 5%. Así, el demandante-peticionario gestionaba y remitía órdenes de compra para los demandados-recurridos y estos últimos se encargaban de la producción, almacenaje y entrega de la mercancía. Durante la relación comercial

entre las partes, el demandado trajo nuevos clientes a la compañía, *véase* apéndice del recurso de *certiorari*, pág. 371 y, según admitió la señora Brenda Ramos, las ventas aumentaron luego de que el demandante-peticionario comenzó a promover sus productos. Apéndice del recurso de *certiorari*, pág. 163.

Por otro lado, no existe controversia en torno al hecho que el demandante peticionario tenía libertad para ejercer sus gestiones de promoción y venta pues decidía a qué clientes visitar y no tenía un horario fijo de trabajo. Además, según estipularon las partes, el señor Cruz Marcano no adquiría la mercancía, no controlaba los precios, los términos de pago, las ventas a crédito o las devoluciones de mercancía; no mantenía inventario de mercancía ni facilidades de almacén; no tenía empleados; no asumía el riesgo por pérdida de mercancía; y no invertía dinero en campañas publicitarias.

Los hechos antes detallados indican que el demandante-peticionario posee algunos rasgos distintivos de un representante de ventas puesto que se dedicaba a promover y vender la mercancía de los demandados a cambio de una comisión. En esa labor determinaba el tiempo que invertiría en cada cliente y tenía libertad para gestionar órdenes que luego remitía a los demandados. De igual modo, amplió el mercado de los demandados puesto que trajo nuevos clientes y colaboró al aumento en las ventas de los productos de éstos. Por tanto, contrario a lo que

determinaron los foros recurridos, el hecho que el demandante-peticionario no controlara los precios, las condiciones de venta, no asumiera riesgos comerciales análogos a los de un distribuidor, no estuviese a cargo de los aspectos de producción o entrega de la mercancía, no comprara la mercancía y no tuviera instalaciones para su operación, no lo excluye de suyo de la protección de la Ley núm. 21.

No empece a lo anterior, entendemos que existen ciertas controversias de hechos que nos impiden determinar si el demandante-peticionario es un representante de ventas a los fines de la Ley núm. 21. En primer lugar, existe controversia en torno a si el demandante-peticionario representaba de forma **exclusiva** los productos de los demandados.[7] Un examen de las transcripciones de las deposiciones que obran en autos demuestra que el demandado Sánchez Tarazona indicó que "Mano Sport era la línea que le otorgamos a él [el señor Cruz Marcano] con el privilegio de que otro vendedor no iba a tener esa línea". Apéndice del recurso de *certiorari*, pág. 377. De igual modo, la co-demandada Ramos Ortiz admitió que, con excepción de unas ventas que realizaba la casa (Artee Deisgners), no se

---

[7] En modo análogo, los tribunales federales se han enfrentado a controversias sobre las características de un representante exclusivo de ventas al amparo de la Ley núm. 21 y han establecido que la determinación sobre la existencia del requisito de exclusividad se puede observar en el contrato entre las partes o en los acuerdos habidos entre ellas es una de hechos. *Véanse Orba Inc., v. MBR Industries, Inc.,* 49 F. Supp. 2d 67 (Dist. Puerto Rico, 1999); *Innovation Marketing v. Tuffcare,* 31 F. Supp. 2d 218 (Dist. Puerto Rico, 1998).

contrató personal adicional para gestionar ventas de las líneas que el señor Cruz Marcano tenía a su cargo. *Id.*, pág. 211.

Sin embargo, surge de las deposiciones que obran en autos que algunos clientes compraban directamente en la fábrica de los demandados-recurridos y que éstos alegan que representaban la línea Mano Sport. *Id.*, págs. 373, 370-71,377. Además, a pesar de que el demandante aduce que era un representante exclusivo de la línea Mano Sport, él mismo reconoció que algunos clientes compraban directamente en la fábrica, *Id.*, págs. 329-30, que no visitaba a ciertos clientes, *Id.*, pág. 307 y admitió que advino en conocimiento del hecho que en una ocasión otro vendedor tuvo en su poder un muestrario de la línea Mano Sport que él representaba. *Id.*, págs. 331, 335.

En virtud de las declaraciones contradictorias de las partes, entendemos que existe controversia sobre si el demandante-peticionario cumple con el requisito de exclusividad dispuesto en la Ley núm. 21. Así, existe controversia sobre si los demandados violaron el pacto de exclusividad con el demandante al permitir que otro vendedor tuviese acceso a su línea, o si, por el contrario, el demandante no era un representante de ventas exclusivo. En modo análogo, tampoco queda claro si los demandados simplemente vendían mercancía a los clientes que se acercaban a la fábrica o si tenían la facultad de promover la líneas en el mismo  mercado o territorio en el que el

demandante operaba.  Además, no queda claro cuál era el mercado o territorio definido del demandante-peticionario a los fines de determinar el ámbito de su operación.  Ello nos impide determinar si, en efecto, el señor Cruz Marcano era un representante de ventas con carácter exclusivo en cierto mercado o territorio.

Habida cuenta de que en el presente caso las partes no otorgaron un contrato escrito que recoja los términos de su relación y el tipo de exclusividad que se le concedió al demandado, surge una controversia de hecho sobre dicho aspecto de la relación.  Estamos entonces ante una determinación de hechos que el foro primario debe realizar luego de que las partes desfilen prueba sobre los arreglos concertados entre ellos.

En segundo lugar, también existe controversia sobre los gastos en los que incurría el demandante y sobre si éste percibía una compensación adicional a su comisión.  A pesar de que no se ha controvertido el hecho que el demandante incurría en gastos de seguros médicos, seguros de autos, teléfono celular y beeper, seguro social y computadora, existe controversia sobre si el demandado recibía compensación por sus gastos de transporte tales como gasolina y peajes.  El demandante aduce que sufragaba esos gastos.  Sin embargo, el señor Sánchez Tarazona indicó en su deposición que esos gastos los cubría la compañía. Nuevamente, en ausencia de un contrato escrito entre las partes y ante el hecho que la determinación de si un

intermediario comercial es un representante de ventas requiere examinar, entre otros factores, el tipo de compensación que recibe y los gastos que su operación acarrea, somos del criterio que erró el Tribunal de Primera Instancia al desestimar sumariamente la demanda sin celebrar una vista en su fondo en la que las partes pudieran presentar prueba sobre estos aspectos de su relación comercial.

En conclusión, luego de estudiar los documentos que obran en el expediente del presente caso, entendemos que algunos de los elementos de la relación entre las partes indican que el demandante-peticionario era un representante de ventas de los demandados-recurridos. Empero, debido a que las partes en este caso no formalizaron un contrato escrito que recoja los elementos rectores de su relación comercial, persisten dudas sobre ciertos hechos esenciales para disponer del presente caso. Por tanto, existen controversias sobre si el demandante sufragaba todos sus gastos tales como los de transporte y sobre el carácter exclusivo o no de la relación. Esto es esencial para determinar si el señor Cruz Marcano es un representante de ventas cobijado por la Ley núm. 21.

En vista de lo anterior, resolvemos que erraron los foros recurridos al desestimar sumariamente la presente demanda por entender que el demandado no era un representante de ventas. Devolvemos el caso al Tribunal de Primera Instancia para la celebración del correspondiente

juicio en su fondo. Advertimos que por el tiempo transcurrido desde la presentación de la demanda en el año 1998, el foro primario debe atender el caso sin ulterior dilación.

Se dictará sentencia de conformidad con lo antes expresado.


                                Anabelle Rodríguez Rodríguez
                                      Juez Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Wilfredo Cruz Marcano

    Peticionario

      v.                      CC-2006-42

Rafael Sánchez Tarazona y
Brenda Ramos Ortiz

    Recurridos

SENTENCIA

San Juan, Puerto Rico, a 8 de noviembre de 2007

Por los fundamentos anteriormente expuestos en la Opinión que antecede, los cuales se incorporan íntegramente a la presente, se dicta Sentencia y se revoca la sentencia dictada por el Tribunal de Apelaciones que había avalado la determinación del Tribunal de Primera Instancia de desestimar la demanda presentada en este caso. Se devuelve el caso al foro de instancia para que continúen los procedimientos acorde a lo que hemos resuelto. Advertimos que por el tiempo transcurrido desde la presentación de la demanda, el foro primario deberá atender el caso sin ulterior dilación.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri no intervino.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo